UNITED STATE DISTRICT COURT
DISTRICT OF EAST TENNESSEE
AT GREENVILLE

| | | |
|---|---|---|
| LYLE HUNTINGTON RICHARDSON SMITH, *et al.* | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| v. | ) | Civil No. 2:15-cv-241 |
| | ) | |
| SARAH YANKEE SMITH, *et al.* | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## **FIRST AMENDED COMPLAINT**

Plaintiffs, for their Amended Complaint against the Defendants, allege as follows:

## **INTRODUCTION**

1. Since 1999, Defendant Sarah Yankee Smith ("Yankee Smith"), the surviving Trustee for the Mary H. Richardson Grantor Trust ("Richardson Trust" or "the Trust") and all of her co-Defendants, acting in concert through their association-in-fact enterprise targeting the rights and ownership interests in the principal of that Trust of Plaintiffs and remainder beneficiaries, conspired to defraud and committed overt acts of fraud, including acts and conduct indictable as federal mail fraud and federal wire transfer fraud, denied and deprived Plaintiffs and remainder beneficiaries of their rights and ownership interests in that principal, and otherwise tortiously injured Plaintiffs and remainder beneficiaries by means of a plan and scheme to defraud conceived by Defendant Yankee Smith and executed by all Defendants.

2. Defendant Yankee Smith's co-conspirators and co-Defendants are attorney James R. Holmes ("Holmes") and his law firm, Holmes & Stice, and Emil H. Messimer and his

former investment firm, Messimer Financial Services, Inc., financial and investment advisors for that Trust during Yankee Smith's trusteeship.

3. Defendant Yankee Smith has continued to target the same Plaintiffs' and remainder beneficiaries' rights and ownership interests in the principal of a separate trust known as the Joint Trust, for which she is the sole Trustee. She has prevented Plaintiffs and remainder beneficiaries from protecting their rights and interests by her unlawful concealment of all activities of Joint Trust administration and of all financial information about the Joint Trust Estate, and has otherwise tortiously injured Plaintiffs and remainder beneficiaries.

4. The ultimate aim of Defendants' scheme and enterprise has been to gain control and ownership of Plaintiffs' and remainder beneficiaries' funds in the principal of the Richardson Trust by concealing and falsifying material financial information about the amounts of said principal, and by concealing all information about and administration of that Trust, thereby enabling Yankee Smith, acting in concert with all of her Co-Defendants, to illegally convert and possess Plaintiffs' and remainder beneficiaries' funds obtained from the Richardson Trust principal without their knowledge.

5. Defendants' conspiracy and scheme to defraud was carried out through the same association-in-fact enterprise with which each Defendant has been associated and which has engaged in interstate commerce, and in which each Defendant conducted or participated directly or indirectly, in the conduct of that enterprise's affairs through a pattern of racketeering activity.

6. Defendant Yankee Smith and her co-conspirators and co-Defendants took actions by which they actively assisted and enabled her to illegally withdraw and appropriate funds from the Richardson Trust principal owned by Plaintiffs and remainder beneficiaries.

7. Defendant Yankee Smith has openly **admitted**, in several emails enclosing spreadsheets prepared by Defendants James Holmes and Holmes & Stice that all Defendants transmitted or caused to be transmitted to Plaintiffs and remainder beneficiaries, that the Co-Trustees withdrew $50,000 in 2005 and $20,000 in 2006 from the Richardson Trust principal. Those withdrawals totaling $70,000 were not permitted or authorized by any terms of the Richardson Trust or by state common law or any state statute, and constituted the tort of conversion or appropriation of Plaintiffs' personal property. Those two withdrawals in those amounts are not included in the damages alleged and claimed by Plaintiffs in their First and Second Claims for Relief in this Amended Complaint (civil RICO and civil RICO conspiracy).

8. Defendants' acts of concealing and falsifying material financial information about the amount of funds in the Richardson Trust, and misinforming Plaintiffs and remainder beneficiaries that the Trust principal contained only $164,096 in 2005, even though the previous Trustee Bank of America wire transferred $354,500 to the Co-Trustees on September 29, 1999, constitute conduct that violates the Racketeer Influenced and Corrupt Organizations Act, 28 U.S.C. § 1961 *et seq.*, with predicate acts of mail and wire fraud.

9. At all relevant times, each named Defendant was acting in concert with, or as an agent for, one or more of the RICO Defendants, and, further, as described in more detail below, conspired with the RICO Defendants to perform the acts averred herein.

10. Plaintiffs are persons injured in their business or property by reason of Defendants' violations of 28 U.S.C. § 1962(c), and may sue therefor, and shall recover threefold their damages sustained and the costs of this suit, including a reasonable attorney's fee, under 28 U.S.C. § 1964(c).

11.  This Amended Complaint also seeks declarative and injunctive relief and recovery of costs and restitution or disgorgement for Defendant Yankee Smith's unjust enrichment enabled by her co-Defendants' actions as co-conspirators and joint tortfeasors, and for all Defendants' actions as co-conspirators and joint tortfeasors constituting the commission of the state common law tort of conversion of Plaintiffs' and remainder beneficiaries' personal property in Richardson Trust principal and state statutory and common law tort of fraud - by intentional misrepresentation of material facts, and by intentional omission and concealment of material facts - all of which occurred during Defendant Yankee Smith's administration of the Richardson Trust as Co-Trustee or as sole surviving Trustee.

12.  This Amended Complaint also seeks declarative and injunctive relief and recovery of costs and damages for Defendant Yankee Smith's multiple breaches of trust in administering the Richardson Trust and the Joint Trust, and for all Defendants' breaches of their fiduciary duty concerning the Richardson Trust, in violation of state statutory and common law.

13.  The continuing concealment of <u>all</u> factual and financial information about the Joint Trust principal and <u>all</u> information about her administration of the Joint Trust is conduct that constitutes breach of several applicable state statutory and common law duties, and such concealment will continue unless these breaches are enjoined by order of this Court.

## SUBJECT MATTER JURISDICTION AND VENUE

14.  This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331 and 2202 (Declaratory Judgment Act), and under 18 U.S.C.§ 1964(c).  Plaintiffs' first claim for relief arises under 18 U.S.C. § 1961,  *et seq.*, as hereinafter more fully appears.

4

15. Plaintiffs' state statutory and common law claims arise out of the same case or controversy as their federal law claims, because all claims in this action arise out of a common nucleus of operative facts. Therefore, this Court also has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

16. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because the events giving rise to this action occurred in this District, and under 18 U.S.C. § 1965.

17. This Court has personal jurisdiction over because each Defendant resides and transacts each such Defendant's affairs in this District.

## PARTIES

18. Plaintiff Lyle Huntington Richardson Smith ("Huntington Smith") is a resident of Kingsport, Tennessee.

19. Plaintiff Carolyn Stevens Richardson Smith Puckett ("Carolyn Puckett") is a resident of Springfield, Virginia.

20. Defendant Sarah Yankee Smith ("Yankee Smith") is a resident of Kingsport, Tennessee.

21. Defendant James W. Holmes ("Holmes") is an attorney licensed to practice law in the State of Tennessee (BOPR # 016149).

22. Defendant Holmes and Stice, PLC, is a law firm located in Kingsport, Tennessee. It is organized under the laws of the State of Tennessee.

23. Defendant Emil Hamilton Messimer ("Messimer") is a resident of Johnson City, Tennessee.

5

24. Defendant Messimer Financial Services, Inc. ("MFS") is a corporation organized under the laws of the State of Tennessee. Its principal place of business is Johnson City, Tennessee.

## FACTUAL BACKGROUND

### Richardson Trust Agreement

25. On May 16, 1963, Mary H. Richardson of Danville, Virginia, the aunt of Dr. Lyle Richardson Smith ("Dr. Smith") of Kingsport, Tennessee, created and funded as grantor the type of trust known as a principal and income trust. That Trust Agreement is known as the Mary H. Richardson Grantor Trust ("Richardson Trust").

26. Dr. Smith was the income beneficiary of the Richardson Trust during his lifetime. His only children, Plaintiffs Carolyn S.R.S. Puckett ("Carolyn Puckett") and Lyle Huntington Richardson Smith ("Huntington Smith"), and Robert Kimball Richardson Smith II ("Kimball Smith"), or their surviving descendants per stirpes, were the remainder beneficiaries of the Richardson Trust principal. After Kimball Smith's death, his daughter, Anna Gabriela Richardson Smith, took her father's place as the third equal remainder beneficiary of the Richardson Trust.

27. With the exception of distributions of $10,000 already made to each of the three remainder beneficiaries of the Richardson Trust upon reaching the age of 25 years, the Trust estate or principal could only be used for education or other contingent expenses for Dr. Smith's children. Other than those three distributions totaling $30,000, no funds were ever distributed to Dr. Smith's children or grandchildren from the Trust principal.

28. The original Richardson Trust Agreement included a schedule made a part thereof identifying the amount of funds and personal property placed in the Trust principal by the

grantor, Mary H. Richardson. That Agreement provides in relevant part that "[t]he Grantor has transferred and delivered to the Trustee all of the property described in the attached schedule, which together with all other property transferred and delivered by the Grantor to the Trustee shall constitute the Trust estate, and shall be held, administered and distributed as provided in this agreement."

29. On May 20, 1999, Defendant James Holmes, on behalf of his clients, Dr. Smith and Yankee Smith, mailed an incomplete version of the Richardson Trust Agreement to each of the remainder beneficiaries. Holmes did not include with any of those copies of that Agreement the referenced schedule identifying the property transferred and delivered by the grantor to the original Trustee.

30. No Richardson Trust Trustee, including Defendant Yankee Smith, has ever provided any of the Plaintiffs or remainder beneficiaries with a copy of the schedule of assets and property that is identified in ARTICLE ONE of the original Richardson Trust Agreement.

31. The Plaintiffs and remainder beneficiaries have never seen a copy of the schedule of assets and property identified and incorporated into the Richardson Trust Agreement, and they have never learned or been informed of the original amount of the principal in that Trust.

32. The Richardson Trust Agreement contains a non-discretionary directive to the Trustee to execute upon the death of Dr. Smith. The Agreement requires that upon his death, "the Trustee shall divide the trust estate" into three equal funds, one for each of the remainder beneficiaries, that "each such fund shall be held and administered as a separate trust," and that the Trustee "shall distribute" the equal fund in each separate trust to each of the remainder beneficiaries.

7

**Richardson Trust Trustees**

33. The original Trustee, named in the Richardson Trust Agreement, was the First National Bank of Danville, Virginia. Through a series of mergers and acquisitions and successor Trustees beginning in 1979, NationsBank, N.A., became the successor Trustee in 1991. On July 5, 1999, NationsBank, N.A., changed its name to Bank of America, N.A. On July 23, 1999, Bank of America, N.A., merged into a new financial institution with the bank title of Bank of America, N.A.

34. On May 20, 1999, Defendant James Holmes (before joining Holmes & Stice) filed a Petition for Appointment of Co-Trustees and Acceptance of Resignation of NationsBank as Original Trustee. In re Mary H. Richardson Grantor Trust and NationsBank, no. 29755 (M), Chancery Ct, Sullivan County, Tennessee. The proposed Co-Trustees were Dr. Smith and Defendant Yankee Smith.

35. Defendant Holmes' Petition acknowledges that Dr. Smith was "only entitled to receive the net income of the Trust" and that "[n]o Trust principal distributions are permitted by the Trust's distribution directives to or for the benefit" of Dr. Smith.

36. Defendant Holmes' Petition includes three exhibits. Exh. A is an incomplete version of the original Richardson Trust Agreement. Holmes omitted the schedule of property transferred and delivered to the original Trustee by the Grantor, Mary H. Richardson, and made part of the original Trust Agreement in its Article One.

37. Defendant Holmes also failed to inform the court that he had filed the Richardson Trust Agreement omitting a material part of that Agreement. Plaintiffs allege that this omission was a breach of the rule of professional responsibility imposing upon an attorney a duty of candor before the court.

38.  On information and belief, when Defendants Holmes and Yankee Smith filed their Petition and served it on each Plaintiff and remainder beneficiary, they omitted from their filed version of the Richardson Trust Agreement the schedule of assets and property originally placed in the principal of that Trust for a single purpose: to conceal from Plaintiffs and remainder beneficiaries the original amount of funds in the principal of that Trust.

### Conversion of Reimbursed Administration Fees

39.  On or about September 2, 1999, Defendant Holmes began legally representing Dr. Smith and Defendant Yankee Smith and sent a letter of that date to then Trustee NationsBank seeking reimbursement of excess administration fees that it had assessed against both the principal and income of the Richardson Trust.  Holmes was the sole negotiator for Dr. Smith and the proposed Co-Trustees regarding excess Richardson Trust administration fees.

40.  Defendant Holmes' Petition for Appointment of Co-Trustees states in relevant part that:

> LYLE R. SMITH has identified to NATIONS BANK an overcharge of Trustee fees in excess of Nineteen Thousand Dollars ($19,000) from May 31, 1992, through December 24, 1998.  Said amount is being refunded to LYLE R. SMITH as unpaid income **and to the Trust as recovery of principal charges for Trust administration fees.**  [emphasis added]

41.  Exhibit C of the Petition is a letter from NationsBank dated October 22, 1998, in response to Holmes' letter dated September 2, 1998, in which NationsBank agreed to reimburse excessive Richardson Trust administration fees when it had finished calculating the correct amount, and further agreed to remit the entire reimbursement amount for both the Trust principal and income by check to the income beneficiary, Dr. Smith.

42.  Defendant Holmes could not have identified excess administration fees exceeding $19,000 to NationsBank without knowing and basing his own calculations on specific and separate amounts of both Richardson Trust principal and income.

43.  On information and belief, Defendants Holmes and Yankee Smith excluded their September 2, 1999, letter to NationsBank from the exhibits to their Petition his in order to prevent the remainder beneficiaries from discovering through his letter the actual amount of funds in the Richardson Trust principal.

44.  Plaintiffs and remainder beneficiaries have never seen a copy of Defendant Holmes' letter dated September 2, 1998.

45.  On unknown dates preceding the Chancery Court's issuance of its Order dated August 19, 1999, granting the Petition for Appointment of Co-Trustees, Bank of America had calculated the amount of reimbursement for excess administration fees charged against both Richardson Trust principal and income, Defendant Holmes had agreed on that amount, and Bank of America had issued a check for the full amount of reimbursement to Dr. Smith.

46.  In its Order dated August 19, 1999, the court stated that it had reviewed "written evidence that Bank of America has [already] returned [excessive administration fees taken from the Richardson Trust] in the amount of $19,853.25."  That reimbursement amount is not included as damages in Plaintiffs' First and Second Claims for Relief contained in this Amended Complaint (civil RICO and civil RICO conspiracy).

47.  Defendant Holmes knew that under the Richardson Trust Agreement, Dr. Smith and the proposed Co-Trustees was not entitled to receive any funds belonging to the principal in that Trust.  Holmes stated in his Petition for Appointment of Co-Trustees that the

excess fees were being refunded to Dr. Smith "as unpaid income and to the Trust as recovery of principal charges for Trust administration fees."

48.  On information and belief, Bank of America's agreement to reimburse excess administration fees that it had assessed against both Richardson Trust principal and income by remitting the entire reimbursement amount by check to Dr. Smith was a settlement term negotiated by Defendant Holmes.  Otherwise, Bank of America would have followed the ordinary and customary appropriate procedure for a trustee to reimburse a trust account, namely, by redepositing the amount of reimbursement directly into its own Richardson Trust account that it held and managed as Trustee.

49.  On information and belief, Defendant Holmes, at the request and on behalf of the proposed Co-Trustees, arranged for Bank of America to remit the entire excess fee reimbursement by check to Dr. Smith in order to enable the Co-Trustees to cash that check and appropriate and convert to their ownership the remainder beneficiaries' share of that reimbursement.

50.  Defendant Holmes breached his fiduciary and professional duty to protect the rights and ownership interests of the remainder beneficiaries in the reimbursement of excess fees charged to the Trust principal by arranging to have Bank of America remit the remainder beneficiaries' portion of reimbursement to Dr. Smith by check.

51.  NationsBank's letter of October 22, 1998, to Defendant Holmes also contained its offer of resignation as Trustee to the Richardson Trust.

52.  By its Order dated August 19, 1999, the Chancery Court accepted and approved Bank of America's resignation as Trustee of the Richardson Trust and appointed Dr. Smith and Yankee Smith as Co-Trustees. That Order directed that the "Bank of America shall

11

transfer its title and interest as Trustee in all Trust property to LYLE R. SMITH and SARAH Y. SMITH in their capacity as Co-Trustees within thirty (30) days of the date of this Order."

53. That Order also specifically instructed the new Co-Trustees that they were "thereby assuming all responsibilities imposed by the Trust document."

54. Following Dr. Smith's death on September 3, 2011, through a series of postal mailings and electronic emails to the Plaintiffs and remainder beneficiaries then residing in three different states, each of the Defendants communicated their individual and collective assertions that on September 6, 2005, the entire amount of principal in the Richardson Trust investment account opened on that date and managed by Defendants Messimer and MFS was $164,096.74.

55. Plaintiffs never received any information or documents concerning the Co-Trustees' administration of the Richardson Trust for the time period from August 19, 1999, when the Co-Trustees were so appointed, through September 6, 2005.

56. When Yankee Smith and her co-Defendants finally told Plaintiffs and remainder beneficiaries on October 5, 2011, the purported amount in the Richardson Trust principal on September 6, 2005, Defendants gave them a materially false figure of $164,096.74.

**Bank of America's 1999 Wire Transfer of $354,500**

57. Nearly two years after Dr. Smith's death in 2011, Bank of America provided Plaintiffs with copies of its financial records covering parts of 1998 and 1999, for its and its predecessor-in-interest NationsBank's administration of the Mary H. Richardson Grantor Trust, in Bank of America Account Number 40-11-111-6380588.

58. The full name of the Bank of America, N.A., Mary H. Richardson Grantor Trust Account is:

ACCOUNT 40-11-111-6380588
BANK OF AMERICA, N.A.

TRUSTEE FOR LYLE R. SMITH
UNDER AGREEMENT WITH MARY H.
RICHARDSON  DATED 5-16-63

59.  Bank of America's financial records provided to Plaintiffs
include the final statement for its Mary H. Richardson Grantor Trust Account
No. 40-11-111-6380588.  The formal title of that final statement is:

ACCOUNTING AND INVESTMENT REVIEW
JUN 01 1999 THROUGH NOV 30 1999

60.  Th final statement for the Mary H. Richardson Trust Account No.
40111116380588 shows (on p. 6) that on September 29, 1999, Bank of America transmitted
$354,500.00 from "PRINCIPAL CASH" of its Richardson Trust account by wire transfer to:

DR. LYLE R. SMITH
PARTIAL DISTRIBUTION
CHASE MANHATTAN BANK FFC NATIONAL
FINANCIAL SERVICES CORP FBO DR. LYLE R.
SMITH SECURITIES SERVICE NETWORK
DR. LYLE R. SMITH

61.  Bank of America's final statement for its Richardson Trust account also
shows that the Co-Trustees never deposited any funds into the Trust principal in  that account at
any time between August 19, 1999, when the Co-Trustees were so appointed, and September 29,
1999.  Therefore, during that time period, the Co-Trustees never repaid to the Richardson Trust
principal the portion of Bank of America's $19,853.25 reimbursement owned by.Plaintiffs and
remainder beneficiaries.

62.  By keeping Plaintiffs' and remainder beneficiaries' share of Bank of
America's reimbursement for themselves, the Co-Trustees thereby appropriated and converted
the personal property of others.

Case 2:15-cv-00241-JRG-MCLC   Document 81   Filed 04/11/16   Page 13 of 55   PageID #: 871

**Messimer-MFS Richardson Trust Account at SSN**

63. At all relevant times, Defendant Emil H. Messimer owned and operated Defendant Messimer Financial Services, Inc. ("MFS"), a securities and brokerage firm.

64. FINRA's registration page for Defendant Emil Messimer shows that from March 1997 through December 2002, he was registered as an Independent Adviser Representative ("IAR") with different securities brokerage firms. From March 1997 through December 2002, Messimer was registered as an IAR with Securities Services Network, Inc. ("SSN") of Knoxville, Tennessee.

65. On or before September 29, 1999, Messimer established an MFS custodial brokerage account with SSN for the Richardson Trust principal.

66. Bank of America's September 29, 1999, wire transfer of $354,500.00 was transmitted through Chase Manhattan Bank as a clearinghouse to "Financial Services Corp. FBO Dr. Lyle R. Smith Securities Service Network." The "Financial Services Corp." brokerage account that received that Bank of America wire transfer was a custodial account that Messimer and Messimer Financial Services, Inc., had established at SSN for the Richardson Trust.

67. On information and belief, the "Financial Services Corp." referenced in Bank of America's final statement as the recipient for its September 29, 1999, wire transfer of $354,500 was in fact Defendant Messimer Financial Services, Inc. On information and belief, at the time of that 1999 wire transfer by Bank of America, Securities Services Network, Inc. (SSN), in Knoxville, Tennessee, was the only FINRA regulated securities brokerage firm that Messimer and MFS were registered with, and it was the only investment firm at which they established custodial accounts for their investor clients.

68. At the time of Bank of America's September 29, 1999, transfer of the Richardson Trust principal to Financial Services Corp. FBO Dr. Lyle R. Smith Securities Service Network, Defendants Messimer and MFS had actual knowledge and knowledge pursuant to Tenn. Code Ann. § 35-15-104(a) of both the occurrence of that transfer and its amount.

**<u>Defendant James Holmes</u>**

69. On information and belief, Defendant Holmes was the intermediary for communications between Bank of America and Messimer and MFS for the September 29, 1999, wire transfer of the Richardson Trust corpus or estate, and facilitated the arrangements for that transfer. On information and belief, Holmes gave instructions to Bank of America to transmit its September 29, 1999, wire transfer of the Richardson Trust principal to the investment account at SSN that Messimer and MFS had opened on behalf of the Co-Trustees.

70. On information and belief, Defendants Messimer and MFS had no personal communications with Bank of America concerning the latter's wire transfer of $354,500.00 from the Richardson Trust estate to the Messimer-MFS investment account at SSN.

71. At the time of Bank of America's September 29, 1999, transfer of the Richardson Trust principal to Financial Services Corp. FBO Dr. Lyle R. Smith Securities Service Network, Defendant Holmes had actual knowledge and knowledge pursuant to Tenn. Code Ann. § 35-15-104(a), of both the occurrence of that transfer and its amount.

72. No Defendant ever informed Plaintiffs or remainder beneficiaries of the occurrence or of the amount of Bank of America's September 29, 1999, transfer of $354,500.00 to the Co-Trustees' investment account with Messimer and MFS at SSN.

**Richardson Trust Transactions 2005-11**

73. Dr. Smith had two living children at the time of his death on September 3, 2011, Huntington Smith and Carolyn Puckett, the Plaintiffs in this civil action. His third child, Kimball Smith, was then deceased, and pursuant to the terms of the Richardson Trust his daughter, Anna Gabriela Richardson Smith, took his place as the third equal remainder beneficiary of that Trust.

74. Defendants Messimer and MFS created a document titled Report Package 3 for the Mary Richardson Trust investment portfolio held in a Messimer-MFS investment account number 952024879.

75. Messimer-MFS Report Package 3 contains a one-page portfolio snapshot for the period from January 1, 2011, through September 9, 2011, and shows individual trading and other transactions for only one day: September 9, 2011.

76. Messimer-MFS prepared Report Package 3 for Defendants Holmes, Holmes & Stice and Yankee Smith with intention and agreement of those Defendants that a copy of Report Package 3 would be mailed to each beneficiary, then residing in three different states.

77. Messimer-MFS Report Package 3 shows $164,096.74 as the amount with which Messimer and MFS opened their Richardson Trust account number 952024879 on September 6, 2005.

78. By letter dated October 5, 2011, Defendants Holmes and Holmes & Stice, on behalf of the surviving Richardson Trust Co-Trustee, Defendant Yankee Smith, mailed to each Plaintiff and remainder beneficiary a copy of Messimer-MFS Report Package 3.

79. The first time that the Plaintiffs and remainder beneficiaries were ever informed by any Defendant how much money was purportedly in the Richardson Trust principal

was when they received a letter dated October 5, 2011, from Defendants Holmes and Holmes & Stice enclosing Messimer-MFS Report Package 3.

80.  When Defendants Holmes and Holmes & Stice mailed Messimer-MFS Report Package 3 on behalf of Yankee Smith to Plaintiffs and remainder beneficiaries on October 5, 2011, each Defendant had actual knowledge and knowledge pursuant to Tenn. Code Ann. § 35-15-104(a) that Bank of America had wire transferred $354,500 to a Richardson Trust investment account opened by Messimer and MFS at SSN, for the benefit of the owners of that account, the Co-Trustees.

81.  Report Package 3 is the only document prepared by Messimer and MFS that Defendants have ever provided to Plaintiffs and remainder beneficiaries.

82.  The discrepancy between $354,500.00, the amount of Richardson Trust principal that Bank of America wire transferred on September 29, 1999, to the newly appointed Co-Trustees, Dr. Smith and Defendant Yankee Smith, and $164,096.74, the figure that all Defendants claimed and represented to Plaintiffs and remainder beneficiaries was the amount of funds in the Richardson Trust principal on September 5, 2005, totals $190,403.26.

83.  That total amount of $190,403.26 constitutes the entirety of the damages claim alleged in Plaintiffs' First and Second Claims for Relief in this Amended Complaint (Plaintiffs' RICO Claims).

### Emails and Spreadsheets of Holmes and Holmes & Stice

84.  From November 4, 2011, through November 14, 2011, Defendants Holmes and Holmes & Stice, acting at the request and on behalf of the surviving Co-Trustee, Defendant Yankee Smith, transmitted a series of email communications to Plaintiff Huntington Smith in Kingsport, Tennessee, Plaintiff Carolyn Puckett in Springfield, Virginia, and remainder

Case 2:15-cv-00241-JRG-MCLC   Document 81   Filed 04/11/16   Page 17 of 55   PageID #: 875

beneficiary Anna Gabriela Richardson Smith, the sole surviving descendant of original remainder beneficiary Kimball Smith, in San Luis Obispo, California. Those Defendants also transmitted a wire transfer of Richardson Trust principal funds to Anna Gabriela Richardson Smith and Carolyn Puckett at those same locations.

### November 3, 2011, Spreadsheet

85. On November 3, 2011, Plaintiff Huntington Smith picked up at the office of Defendants Holmes and Holmes & Stice, a spreadsheet that Holmes himself had prepared. That spreadsheet shows $185,747.93 as the Richardson Trust principal, and also shows $61,915.98 as the amount of that principal that Defendants Yankee Smith, Holmes and Holmes & Stice intended to distribute to each of the three remainder beneficiaries, namely, the Plaintiffs herein and Anna Gabriela Richardson Smith.

86. Defendant Holmes' spreadsheet of November 3, 2011, also shows two separate "withdrawals" or removals of funds by the Co-Trustees from the Richardson Trust principal: $50,000 on 08/09/06 (shown on line 6), and another $20,000 on 06/14/07 (line 11). The Co-Trustees could only make withdrawals from the Trust principal by asking Defendants Messimer and MFS to execute a securities transaction to convert or liquidate stocks in the amount of the requested withdrawal to cash to be distributed to the Co-Trustees. Messimer and MFS executed the Co-Trustees' requests for such withdrawals of $50,000 and $20,000 from the Richardson Trust principal in the Messimer-MFS account held at TD Ameritrade. These withdrawals are not included in Plaintiffs' First and Second Claims for Relief (Plaintiffs' RICO Claims).

87. Plaintiff Huntington Smith forwarded Defendant Holmes' November 3, 2011, spreadsheet by email to the other two remainder beneficiaries, who then resided in Virginia and

California. Until they received and read Defendant Holmes' November 3, 2011, spreadsheet, Plaintiffs and remainder beneficiaries had no knowledge of the Co-Trustees' two withdrawals of Richardson Trust principal in 2005 and 2006 totaling $70,000. They had never been informed in any manner or form by the Co-Trustees about, and had never seen any documents showing, the occurrence or existence of the Co-Trustees' withdrawals and conversions of $50,000 on August 9, 2006, and $20,000 on June 14, 2007.

### Nov. 4, 2011 (11:44 a.m.) Email and Spreadsheet

88. On November 4, 2011 (11:44 a.m.), Defendants Holmes and Holmes & Stice sent an email and enclosed spreadsheet prepared by Holmes to Plaintiffs' counsel attesting to the accuracy of the amounts shown in that email and enclosed spreadsheet of certain holdings and transactions on specific dates in the Richardson Trust account that Messimer and MFS established and managed at TD Ameritrade.

89. The November 4, 2011 (11:44 a.m.) email from Defendants Holmes and Holmes & Stice states in relevant part that:

> I attached a spreadsheet listing the Ameritrade activity of the Richardson Trust since 2005. I do not currently have year-end statements for the Trust. The assumption [*sic*] that I have used are as follows:
> 1. The Ameritrade account was originally opened with $164,096.74 on September 5, 2005;
> [Paragraphs 1 through 4 are omitted]

90. Holmes's emails with attached spreadsheets sent to Plaintiffs and remainder beneficiaries on the following dates, showed differing amounts of Richardson Trust principal to be distributed to them (in parentheses): November 4, 2011 (11:44 a.m.3:33 p.m.) ($185,747.93); and November 8, 2011 ($158,636.91).

91. Plaintiffs allege that through their October 5, 2011, letters and enclosed report, their spreadsheet of November 3, 2011, and their emails and enclosed spreadsheets dated November 4, 2011 (11:44 a.m. and 3:33 p.m.) and November 8, 2011, that Defendants mailed or electronically transmitted, or caused to be mailed or electronically transmitted, in interstate commerce, Defendants knowingly and intentionally misrepresented to Plaintiffs and remainder beneficiaries the true amount of Richardson Trust principal and also concealed from Plaintiffs and remainder beneficiaries the occurrence and the amount of Bank of America's September 29, 1999, wire transfer of $354,500.00 to the Co-Trustees via an investment account opened for them by Defendants Messimer and Messimer Financial Services.

92. Each Defendant's concealment of Bank of America's 1999 wire transfer of $354,500.00 to the Co-Trustees, of which transfer each Defendant had personal knowledge at the time of the transfer, constitutes the commission of the common law intentional tort of fraud by omission.

93. By her concealment of the Co-Trustees' appropriation and conversion of Plaintiffs' and remainder beneficiaries' ownership interest in the $19,853.25 reimbursed to the Richardson Trust principal and income, Defendant Yankee Smith committed the intentional common law tort of fraud by omission.

### Co-Trustees' Illegal Withdrawals or Thefts of $70,000

94. The spreadsheets prepared by Defendant Holmes and enclosed with each of Holmes' and Holmes & Stice's three emails on behalf of Yankee Smith to Plaintiffs and remainder beneficiaries dated November 4 (11:44 a.m. and 3:38 p.m.) and 8, 2011, show the same two Co-Trustees' withdrawals from Richardson Trust principal held in the Messimer and MFS Richardson Trust brokerage account at TD Ameritrade that are shown on the Holmes'

November 3, 2011, spreadsheet, namely, $50,000 on August 9, 2006, and $20,000 on June 14, 2007.

95. When the Co-Trustees made the illegal withdrawals of $50,000 and $20,000 from the Richardson Trust principal, Defendant Yankee Smith was a Co-Trustee, and Defendants Messimer and MFS held that Trust principal in an investment brokerage account at TD America.

96. The terms of the Richardson Trust Agreement did not confer upon Defendant and Co-Trustee Yankee Smith any permission, authority or right to withdraw any funds from the Richardson Trust principal.

97. From September 5, 2005, through on or about November 10, 2011, Defendants Messimer and MFS had custody of and managed the corpus or principal of the Richardson Trust in a TD Ameritrade brokerage account. In his capacity as financial adviser and manager of the Richardson Trust principal.

98. Defendants Messimer and MFS allocated and distributed investment income from Richardson Trust principal to Dr. Smith as the income beneficiary. Richardson Trust financial statements during the period from Sept. 5, 2005, through November 2011 show regular allocations of income to Dr. Smith. Those statements contain detailed transactional activity and separate accounting for both principal and income.

99. Defendants Messimer and MFS had actual and personal knowledge, and knowledge under Tenn. Code Ann. § 35-15-104(a), that the principal of the Richardson Trust was owned by Plaintiffs and remainder beneficiaries, and that Dr. Smith, as income beneficiary and as Co-Trustee, and Defendant Yankee Smith as Co-Trustee, had no authority or right to withdraw any funds from the Richardson Trust principal.

100.  Defendants Messimer and MFS could not have opened that Richardson Trust account at TD America without possessing a copy of the Trust Agreement.  They could not have executed the Investment Advisor portion of the TD America Custodial Account Establishment Documents without having a copy of the Trust Agreement and knowing all the terms of that Agreement.  On August 11, 2005, the Co-Trustees executed a form document entitled "Trust Certification for Custodial Accounts" in connection with the opening by Messimer and MFS of a investment account for the Richardson Trust.

101.  Defendants Messimer and MFS had no authority or right under the Richardson Trust Agreement or under state statutory or common law to execute the securities transactions that enabled the Co-Trustees to make the illegal withdrawals of $50,000 and $20,000 from the Richardson Trust principal.

102.  Defendants had actual and personal knowledge, and knowledge under Tenn. Code Ann. § 35-15-104(a), when they communicated with Plaintiffs and remainder beneficiaries by letter dated October 5, 2011, with enclosed Report Package 3, and by emails and spreadsheets dated November 3, 4 (11:44 a.m. and 3:38 p.m.) and 8, 2011, that the Co-Trustees' withdrawals of $50,000 in 2005 and $20,000 in 2006 were not permitted or authorized by the Richardson Trust Agreement or by any state statute or common law.

103.  Defendants had knowledge that those two Co-Trustee withdrawals constituted thefts of Richardson Trust principal owned by Plaintiffs and remainder beneficiaries. Those withdrawals by the Co-Trustees constituted felony theft under Tenn. Code Ann. § 39-14-103(a) and 105(a)(6).

**Partial Distribution of Richardson Trust Principal**

104.  The Richardson Trust Agreement contains  specific and non-discretionary directives to the Trustee to execute after the death of Dr. Smith:

ARTICLE TWO

3.  Upon the death of the survivor of the death of the Grantor and the said Lyle Richardson Smith, the Trustee **shall divide the trust estate into equal funds, one for each child** of Lyle Richardson Smith then living and one for the then living descendants collectively [per stirpes] of each child of Lyle Richardson Smith then deceased.  .  .  .  **Each such fund shall be held and administered as a separate trust** and shall be held and disposed of as follows:

(e).  **The Trustee shall distribute each fund** set aside for the descendants of a deceased child of Lyle Richardson Smith to such descendants, per stirpes.

**Induced Signatures of Defendant Yankee Smith's Receipt and Release**

105.  In an attempt to obtain immunity from legal action by the Plaintiffs and remainder beneficiaries against Co-Trustee Yankee Smith for conversion and possession of Richardson Trust principal and for other wrongs committed against Plaintiffs and remainder beneficiaries during the time of her administration of the Richardson Trust as Co-Trustee or as sole surviving Trustee, Defendants Holmes and Holmes & Stice, on behalf of and at the request of Defendant Yankee Smith, improperly induced Plaintiffs and remainder beneficiaries into signing a broad receipt and release document that they had drafted.

106.  By emails dated November 4 (3:38 p.m.), 9 and 10, Defendants Holmes, Holmes & Stice and Yankee Smith warned Plaintiffs and remainder beneficiaries that they would withhold distribution of the Richardson Trust principal until they received from each remainder beneficiary a signed receipt of distributed principal funds and release of Trustee Yankee Smith from claims and liabilities "as surviving Co-Trustee of the [Richardson Trust]."

107.  Defendant Holmes stated in his November 4, 2011 (3:38 p.m.) email that he must receive those signed receipts and releases "prior to me instructing Co-Trustee Sarah Smith to make the final distributions."

108.  By email dated November 9, 2011, Defendants Holmes, Holmes & Stice and Yankee Smith restated that they were withholding distribution of the principal until they received signed receipts and releases and warned that if the remainder beneficiaries failed to do so, Holmes would "petition the court to approve the termination and distribution of the Richardson Trust."

109.  By emails dated November 10 and 14, 2011, Defendants Holmes, Holmes & Stice and Yankee Smith sent notice that they had received the executed receipts and releases from each remainder beneficiary, stated that the Richardson Trust principal was being held at TD America, and gave Plaintiffs and remainder beneficiaries instructions about information that Holmes needed from them before they could receive distributions from the Trust principal.

110.  On November 15, 2011, Defendants Holmes, Holmes & Stice and Yankee Smith transmitted by wire transfer distributions of Richardson Trust principal to Plaintiffs and remainder beneficiaries.  They transmitted $61,499.31 by wire transfers to Carolyn Puckett in Springfield, Virginia, and to Anna Gabriela Richardson Smith in San Luis Obispo, California. Plaintiff and remainder beneficiary Huntington Smith personally picked up a check for $37,499.31 of Richardson Trust principal.

111.  The actions and conduct of Defendants Yankee Smith, Holmes and Holmes & Stice concerning their proposed distributions of Richardson Trust principal and their coercion of receipts and releases from the remainder beneficiaries, including Holmes' individual and personal involvement when he stated that he would instruct Yankee Smith when she could make

the proposed distributions, demonstrates the knowing and intentional participation of each of those Defendants in the association-in-fact enterprise and scheme to defraud Plaintiffs and remainder beneficiaries.

112.  When Plaintiffs and remainder beneficiaries executed the receipts and releases, they were not aware of the material fact that Bank of America had transferred the Richardson Trust estate totaling $354,500.00 to the Co-Trustees on September 29, 1999.

113.  When Plaintiffs and remainder beneficiaries executed the receipts and releases, they were not aware of the material fact that the Co-Trustees had not returned or redeposited to the Trust principal any of $19,853.25 in excess Trust administration fees reimbursed by Bank of America to Dr. Smith and the Co-Trustees.

114.  The consent or release or ratification of each Plaintiff and remainder beneficiary contained in the receipt and release that each signed and returned to Yankee Smith, Holmes and Holmes & Stice is invalid and unenforceable under Tenn. Code Ann. §§ 35-15-817(c) and 35-15-1009, because the execution of each of those receipts and releases was induced by the improper conduct of the Trustee, and because Plaintiffs and remainder beneficiaries at the time of the consent, release or ratification, did not know of their rights or of the material facts relating to the Trustee's commission of breach of trust.

115.  Defendant Yankee Smith has never disclosed to Plaintiffs and remainder beneficiaries any information about the amount of principal in the Richardson Trust, or about any transactions whatsoever concerning its administration during the period from May 16, 1963, when the Trust was created, through September 6, 2005, as to which date she provided only fraudulent information and did not provide even that false information until October 5, 2011.

116. Defendant Yankee Smith herself has concealed and withheld, and continues to conceal and withhold, and has personally directed and instructed, and continues to direct and instruct, her co-conspirators and co-Defendants not only to conceal and withhold financial information and records about the Richardson Trust but also not to speak to Plaintiffs about any matters concerning that Trust, specifically including Bank of America's September 29, 1999, wire transfer of the Richardson Trust estate or principal totaling $354,500 to the Co-Trustees.

117. On information and belief, Defendant Emil Messimer informed Defendant Yankee Smith about Bank of America's final statement showing the wire transfer of $354,500 to the Co-Trustees on September 29, 1999. On information and belief, Yankee Smith instructed Messimer not to speak or meet with Plaintiffs or their counsel about the Richardson Trust.

## THE LYLE R. SMITH AND SARAH Y. SMITH JOINT TRUST

118. On October 11, 2007, Dr. Smith and Yankee Smith created the Lyle R. Smith and Sarah Y. Smith Joint Trust ("Joint Trust") and Dr. Smith executed his Last Will and Testament. Defendants Holmes and Holmes & Stice drafted the Joint Trust and that Will, and represented both parties in those transactions. The Joint Trust was revocable while both Trustees were living. After Dr. Smith's death, it became irrevocable and Yankee Smith became sole Trustee.

### Dr. Smith's Will

119. Dr. Smith's will was a simple pass-through type will, under which all of his real and personal property at the time of his death transferred by operation of law to the Joint Trust. It states in relevant part that:

> I devise all of my tangible personal property . . . owned by me at the date of my death to LYLE R. SMITH and SARAH Y. SMITH, Trustees under the LYLE R. SMITH and SARAH Y. SMITH JOINT TRUST, dtd. 10-11-2007, executed prior to the execution of this Will on the 11th day of October, 2007, to be added to SCHEDULE B – LYLE R.

SMITH SEPARATE PROPERTY, to be administered as provided in said Trust Agreement.

I devise all the rest, residue and remainder of my property . . . wherever situated and whether acquired before or after the execution of this Will to LYLE R. SMITH and SARAH Y. SMITH, Trustees under the LYLE R. SMITH and SARAH Y. SMITH JOINT TRUST, dtd. 10-11-2007, executed prior to the execution of this Will on the 11th day of October, 2007, to be added to SCHEDULE B – LYLE R. SMITH SEPARATE PROPERTY, to be administered as provided in said Trust Agreement.

### **The Joint Trust**

120. The Joint Trust is a principal and income type trust. Before Dr. Smith's death on September 3, 2011, he and Defendant Yankee Smith were the joint income beneficiaries as well as the joint Trustees of the Joint Trust. Upon Dr. Smith's death, Yankee Smith became the sole Trustee and income beneficiary.

121. Plaintiffs Huntington Smith and Carolyn Puckett, and Anna Gabriela Richardson Smith are the remainder beneficiaries of the principal of the Joint Trust Estate.

122. Defendant Yankee Smith herself denied several personal requests from Plaintiffs for a copy of the Joint Trust. In response to one such request, she responded that "I can't do that."

123. By letter dated November 28, 2012, to an attorney then representing Plaintiffs in their struggle merely to obtain a copy of the Joint Trust, Defendants Holmes and Holmes & Stice, stated the following on behalf of Defendant Yankee Smith:

> I have enclosed a copy of the Lyle and Sarah Smith Joint Trust, dtd.10-11-07, along with a copy of the transfer Deed of personal residence into the Trust. The only other assets would be the tangible personal property of Dr. Smith currently in the possession of Mrs. Sarah Smith, sole Trustee.

A copy of the "transfer Deed of personal residence into the Trust" was not included in the copy of the Joint Trust that Plaintiffs received from Defendants Holmes and Holmes & Stice.

124. Defendant Yankee Smith have never provided Plaintiffs with a copy of the transfer deed of personal residence into the Joint Trust.

125. Defendant Yankee Smith has never provided Joint Trust remainder beneficiary Anna Gabriella Richardson Smith with any information or any documentation about the Joint Trust. Yankee Smith never even notified her of the existence of the Joint Trust when it became irrevocable, as required by Tenn. Code Ann. § 35-15-813(b).

126. The first five paragraphs of the Lyle R. Smith and Sarah Y. Smith Joint Trust state as follows:

> THIS AREEMENT is made this 11th day of October, 2007, between LYLE R. SMITH and SARAH Y. SMITH, husband and wife, of Kingsport, Tennessee, as Settlors, and LYLE R. SMITH and SARAH Y. SMITH, as Trustees. This Trust shall be known as the "LYLE and SARAH Y. SMITH JOINT TRUST, dtd. 10-11-07."
>
> WHEREAS the Settlors hereby transfer to the Trustees the property listed in the attached Schedule A, which is the joint property of the Settlors, wherein each is a joint owner as a tenant in common.
>
> WHEREAS Settlor LYLE R. SMITH hereby transfers to the Trustees the property listed in the attached Schedule B, which is his separate property and which shall be maintained as a separate share known as the LYLE R. SMITH share.
>
> WHEREAS Settlor SARAH Y. SMITH hereby transfers to the Trustees the property listed in the attached Schedule C, which is her separate property and which shall be maintained as a separate share known as the SARAH Y. SMITH share.
>
> The property listed in these schedules, all additional property received by the Trustees from any person by Will or otherwise, and all investments and reinvestments thereto are herein collectively referred to as the "Trust Estate." Any joint property or separate property of '[Dr. Smith or Defendant Yankee Smith] which is transferred to or from the trust shall retain its same character after the transfer. The "Trust Estate" shall be held upon the following trusts: [Sections FIRST through EIGHTH, which are omitted]

127. The copy of Schedule A, Joint Property provided to Plaintiffs by Defendants Holmes, Holmes & Stice, and Yankee Smith contains ten numbered lines. Line one states: "Cash - 100.00." The remaining nine lines on Schedule A are blank.

128. Neither Schedule B nor Schedule C of the Joint Trust lists any personal property. The copies of Schedules B and C provided to Plaintiffs by those three Defendants contain only blank lines. Schedule B - Lyle R. Smith Separate Property, and Schedule C - Sarah Y. Smith Separate Property, each contains ten numbered blank lines.

129. Section 2 of the FOURTH trust governs distribution of the Trust Estate after the death of Defendant Yankee Smith:

> SECTION 2: Upon the death of the SURVIVING SETTLOR [Defendant Yankee Smith], "the Trustee shall divide the balance of the Trust [Estate] to be distributed as provided" [in the following paragraphs (a) through (e) of Section 2, which together comprise the entirety of the rest of said Section 2].

> Paragraph (d) of Section 2 of the Joint Trust states in relevant part::

> (d) The Trustee shall transfer the tangible personal property belonging to [Dr.] LYLE R. SMITH to [Plaintiffs and remainder beneficiaries] LYLE HUNTINGTON RICHARDSON SMITH [and] CAROLYN STEVENS RICHARDSON SMITH PUCKETT, and [remainder beneficiary] ANNA GABRIELLA [sic; correct form of middle name is Gabriela] RICHARDSON SMITH, subject to the transfer of certain items of [personal property] that shall be listed and distributed as stated in the attached SCHEDULE E. The ownership of said tangible personal property shall be determined in the sole discretion of the Successor Trustee, and as provided in the attached SCHEDULE E.

130. After Plaintiffs filed their original Complaint, Defendants Holmes and Holmes & Stice provided Plaintiffs or remainder beneficiaries with a copy of SCHEDULE E referenced in Joint Trust Section 2, paragraph (d). That Schedule contains only blank lines.

131. Paragraph (e) of Section 2 of the Joint Trust states in relevant part that: "[t]he rest and remainder of the Trust Estate shall be divided into three (3) equal and separate shares, to be distributed as follows: [three subparagraphs, (i), (ii) and (iii), which provide that

"One (1) share shall be distributed outright and free of trust to [(i) Plaintiff Huntington Smith; (ii) Plaintiff Carolyn Puckett; and (iii) remainder beneficiary Anna Gabriela Richardson Smith; each receiving his or her share per stirpes]."

132. On information and belief, Defendant Yankee Smith opened a Joint Trust Estate investment account. Defendant Yankee Smith has never provided Plaintiffs or remainder beneficiaries with any information, financial or otherwise, about the Joint Trust investment account, including its existence.

133. Since becoming the sole surviving Trustee of the Joint Trust on September 3, 2011, Defendant Yankee Smith has refused to provide Plaitntiffs and remainder beneficiaries of the Joint Trust with any information in any manner or form about her administration of that Trust. Yankee Smith has never provided Plaintiffs and remainder beneficiaries with any financial reports, annual accounting reports, trustee reports or accountings, or any general accounting records for the administration of the Joint Trust Estate.

134. At all relevant times, Defendant Yankee Smith has intentionally concealed all information and records about what real property, or what personal property of Dr. Smith or Yankee Smith, is in the Joint Trust Estate.

135. At no time has Defendant Yankee Smith acted in good faith, within the meaning of Tenn. Code Ann. § 35-2-102(b), toward Plaintiffs and remainder beneficiaries during her administration of the Joint Trust. Yankee Smith has deliberately disregarded their interests in the Joint Trust Estate.

136. At all relevant times, Defendant Yankee Smith has obstructed and prevented Plaintiffs and remainder beneficiaries from obtaining any information or any documents disclosing material facts about the Joint Trust that are necessary for them to determine what

30

interests they have in the Joint Trust and to protect those interests, as required by Tenn. Code Ann. § 35-15-813.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
### (Defendants' Violations of RICO, 18 U.S.C. § 1962(c))

137.  Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Amended Complaint as if set forth in full, except for paragraphs 7, 39-50, 61-62, 86-88, 93-103 and 113.

138.  Plaintiffs' First Claim for Relief under RICO seeks damages only in the amount of $190,403.26, comprising the difference between the amount of Richardson Trust principal transferred to the Co-Trustees by Bank of America on September 29, 1999, namely, $354,500, and the amount of Richardson Trust principal that all Defendants misrepresented in 2011 to Plaintiffs and remainder beneficiaries, namely, $164,096.74.

139.  At all relevant times, each of the Plaintiffs is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

140.  At all relevant times, each of the Defendants is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

## Defendants' RICO Enterprise

141.  Defendant Yankee Smith and each of her co-Defendants and co-conspirators are a group of persons associated together in fact for the common purpose of carrying out an ongoing criminal enterprise.

142.  Defendants have arranged their actions as a group to accomplish the goals of their criminal scheme.

143.  Over the years, Defendants have adapted their scheme to defraud Plaintiffs as needed, first, by targeting their interests as remainder beneficiaries in the Richardson Trust principal.

144.  Defendant Yankee Smith devised and has controlled and overseen each Defendant's participation in the scheme to defraud.  Defendant Yankee Smith has directed all other Defendants to take actions necessary to accomplish the overall aims of the criminal enterprise.

145.  Defendants, conspiring and acting in concert, constitute an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), referred to hereinafter simply as "the Enterprise."  Each of the Defendants participated in the operation or management of the Enterprise.

146.  At all relevant times, the Enterprise was engaged in, and its activities affected, interstate commerce within the meaning of 18 U.S.C. § 1962(c).

**Pattern of Racketeering Activity and Predicate Crimes**

147.  Defendants conducted or participated, directly or indirectly, in the conduct, management or operation of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c).

148.  Defendants willingly and knowingly devised, participated in and acted in concert in furtherance of a scheme or artifice to defraud Plaintiffs and remainder beneficiaries engaged in the Enterprise through a series of mailings and emails transmitted through interstate commerce.

149. As described herein, Defendants engaged in a continuing scheme or artifice to defraud Plaintiffs by their conspiracy and collusion, in violation of 18 U.S.C. §§ 1341 and 1343.

150. The ultimate objective of Defendants' scheme to defraud was the concealment of financial information about the principal in the Richardson Trust, and appropriation or conversion of Plaintiffs' ownership interests in the principal of that Trust.

151. Defendants made materially false and fraudulent misrepresentations to Plaintiffs and remainder beneficiaries, including representations made with reckless indifference to their truth or falsity concerning the Richardson Trust.

152. Defendants' false, misleading and fraudulent statements about the Richardson Trust were relied upon by Plaintiffs and remainder beneficiaries.

153. Defendant Yankee Smith has concealed and withheld, and directed and instructed her co-conspirators and co-Defendants to conceal and withhold, material financial information and records about the Richardson Trust.

154. Defendants willingly and knowingly committed several counts of acts indictable as federal criminal mail fraud and wire transfer fraud concerning the Richardson Trust, and indictable as federal criminal mail fraud concerning the Joint Trust.

### **Multiple Counts of Federal Mail Fraud and Wire Fraud**

155. A scheme to defraud under 28 U.S.C. §§ 1341 and 1343 is any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations or promises. In furtherance of their scheme to defraud Plaintiffs of their ownership rights and interests in the Richardson Trust principal in violation of 28 U.S.C. §§ 1341 and 1343, and as described herein, Defendants transmitted, or

caused to be transmitted, by means of wire communication in interstate commerce, emails and electronic transfers of funds, and also caused matters and things to be placed in a post office or authorized depository, or deposited or caused to be deposited matters and things to be sent or delivered by a private or commercial interstate carrier, including the following:

(1) One count of acts by Defendants, participating in the Enterprise in furtherance of their scheme to defraud Plaintiffs and remainder beneficiaries of their ownership rights and interests in the Richardson Trust principal, that are indictable as federal criminal mail fraud in violation of 18 U.S.C. § 1341, to wit, the mailing to Plaintiffs by Defendants Holmes and Holmes & Stice on behalf of Defendant Yankee Smith of a letter dated October 5, 2011, enclosing a copy of Messimer-MFS Report Package 3, which contained false information that the actual amount of Richardson Trust principal was only $164,096.74 on September 5, 2005, and also fraudulently omitted or concealed the occurrence and the amount of Bank of America's September 29, 1999, wire transfer of $354,500.00 to the Co-Trustees via an investment account opened for them by Defendants Messimer and Messimer Financial Services. Each Defendant had knowledge that such information was false at the time it was conveyed to Plaintiffs and remainder beneficiaries, as more specifically alleged in Plaintiffs' Factual Background above.

(2) Eight counts of acts by Defendants, participating in the Enterprise in furtherance of their scheme to defraud Plaintiffs and remainder beneficiaries of their ownership rights and interests in the Richardson Trust principal, that are indictable as federal criminal wire transfer fraud in violation of 18 U.S.C. § 1343, to wit:

(i). the seven electronic transmissions made by or caused to be made by Defendants Holmes and Holmes & Stice, on behalf of Defendant Yankee Smith, of emails and enclosed spreadsheets prepared by Holmes and containing and reflecting financial information obtained from Defendants Messimer and MFS, dated November 3, 4 (11:44 a.m. and 3:38 p.m.), 8, 9, 10, 14, all made in furtherance of their scheme to defraud Plaintiffs and remainder beneficiaries of

34

their ownership rights and interests in the Richardson Trust principal  The spreadsheets and emails dated November 3, 4 (11:44 a.m. and 3:38 p.m.) and 8 contained false information that the actual amount of Richardson Trust principal was only $164,096.74 on September 5, 2005, and also fraudulently omitted or concealed the occurrence and the amount of Bank of America's September 29, 1999, wire transfer of $354,500.00 to the Co-Trustees via an investment account opened for them by Defendants Messimer and Messimer Financial Services. Each Defendant had knowledge that such information was false at the time it was conveyed to Plaintiffs and remainder beneficiaries, as more specifically alleged in Plaintiffs' Factual Background above.

(ii).  the wire transfer by Defendants Holmes and Holmes & Stice, on behalf of Defendant Yankee Smith, of Richardson Trust principal in an amount that each Defendant falsely and fraudulently claimed to be the entirety of that Trust principal.  Each Defendant had knowledge that such wire transfer did not contain the actual full amount of Richardson Trust principal at the time it was conveyed to Plaintiffs and remainder beneficiaries, as more specifically alleged in Plaintiffs' Factual Background above.

156.  Each of Yankee Smith's co-Defendants is also liable for personally committing predicate racketeering acts of mail fraud and/or wire transfer fraud  in violation of 18 U.S.C. §§ 1341 and 1343 because each defendant aided and abetted the commission of such predicate racketeering acts.

157.  Each of the Defendants has engaged in multiple predicate acts, as described herein.  The conduct of each of the Defendants constitutes a pattern of racketeering activity with the meaning of 18 U.S.C. § 1961(5).

158.  Plaintiffs were injured in their business or property by reason of Defendants' violations of 18 U.S.C. § 1962(c).  The injuries to Plaintiffs caused by Defendants' violations of 18 U.S.C. § 1962(c) include loss of personal property.

159.  These injuries to Plaintiffs were a direct, proximate and reasonably foreseeable result of Defendants' violations of 18 U.S.C. § 1962(c).  Plaintiffs are the victims of Defendants' unlawful Enterprise.  Plaintiffs have been and will continue to be injured in an amount to be determined at trial.

35

160. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from Defendants.

## SECOND CLAIM FOR RELIEF
### (Defendants' Conspiracy to Violate RICO, 18 U.S.C. § 1962(d))

161. Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Amended Complaint as if set forth in full, except for paragraphs 7, 39-50, 61-62, 86-88, 93-103 and 113.

162. Plaintiffs' Second Claim for Relief under RICO seeks damages in the amount of $190,403.26, comprising the difference between the amount of Richardson Trust principal transferred to the Co-Trustees by Bank of America on September 29, 1999, namely, $354,500, and the amount of Richardson Trust principal that all Defendants misrepresented in 2011 to Plaintiffs and remainder beneficiaries as comprising the Richardson Trust principal, namely, $164,096.74.

163. Defendants have unlawfully, knowingly and willfully combined, conspired and agreed together to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

164. Upon information and belief, Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity. Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

165. Upon information and belief, Defendants agreed to conduct or participate, directly or indirectly, in the conduct, management or operation of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

166. Each Defendant knew about and agreed to facilitate the Enterprise's scheme to defraud Plaintiffs and remainder beneficiaries concerning their ownership interests in the principal of the Richardson Trust.

167. As a direct and proximate result of Defendants' conspiracy, the acts of racketeering activity of the Enterprise, the overt acts taken in furtherance of that conspiracy, and Defendants' violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their property and will continue to be injured in an amount to be determined at trial.

168. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from Defendants.

### THIRD CLAIM FOR RELIEF
#### (Unjust Enrichment)

169. Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Amended Complaint as if set forth in full.

170. Through their tortious, illegal and fraudulent conduct, as set forth herein, Defendants participated in and aided and abetted Defendant Yankee Smith's conversion or appropriation of approximately $304,276.51 from Richardson Trust principal owned by Plaintiffs and remainder beneficiaries.

171. That amount of unlawful proceeds converted or appropriated from Richardson Trust principal constitutes Defendant Yankee Smith's ill-gotten gains to which she has no right or claim.

172. Defendants should be prevented from receiving any benefits arising out of their wrongful conduct against Plaintiffs and remainder beneficiaries by this Court's use of the equitable remedies of disgorgement and restitution.

## FOURTH CLAIM FOR RELIEF
### (Defendants' Civil Conspiracy)

173.  Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Amended Complaint as if set forth in full.

174.  As set forth above, Defendants have committed torts and wrongs against Plaintiffs and remainder beneficiaries, including acts of racketeering giving rise to civil RICO violations, fraud, conversion and unjust enrichment.

175.  Defendants agreed to participate in a common scheme against Plaintiffs and remainder beneficiaries, and intentionally participated in the furtherance of a plan or purpose to illegally obtain property from them.  In furtherance of this plan or purpose, Defendants committed overt and unlawful acts, including acts of racketeering as alleged herein.

176.  As a direct and proximate result of Defendants' conspiracy, the overt acts committed in furtherance of that conspiracy, and the torts committed against Plaintiffs, Plantiffs have been damaged in their property.

## FIFTH CLAIM FOR RELIEF
### (Fraud by Intentional Misrepresentation of False Material Facts)

177.  Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Amended Complaint as if set forth in full.

178.  Each of the Defendants had knowledge, pursuant to Tenn. Code Ann. § 35-15-104(a), that each time they represented to Plaintiffs and remainder beneficiaries on November 8, 2011, the false material fact that the total amount of Richardson Trust estate principal to be distributed pursuant to the terms of the Richardson Trust was $199,569.97, they had knowledge, pursuant to Tenn. Code Ann. § 35-15-104(a), that such representation was false.

179. Defendants intended that Plaintiffs and remainder beneficiaries would rely upon Defendants' representation of the false material fact that the total amount of Richardson Trust estate principal to be distributed pursuant to the terms of the Richardson Trust was $199,569.97, and act in reliance upon the truth of that representation.

180. Plaintiffs and remainder beneficiaries did not know at the time that Defendants' representation that the total amount of Richardson Trust estate principal to be distributed pursuant to the terms of the Richardson Trust was $199,569.97 was a false representation of a material fact.

181. Plaintiffs and remainder beneficiaries were justified in light of the circumstances and their knowledge to rely upon the truth of Defendants' representation that the total amount of Richardson Trust estate principal to be distributed pursuant to the terms of the Richardson Trust was $199,569.97.

182. As a result of Defendants' intentional false representation to Plaintiffs and remainder beneficiaries that the total amount of Richardson Trust estate principal to be distributed pursuant to the terms of the Richardson Trust was $199,569.97, Plaintiffs and remainder beneficiaries sustained damages.

183. Defendants acted in concert and colluded in knowingly representing to Plaintiffs and remainder beneficiaries the false material fact that the total amount of Richardson Trust estate principal to be distributed pursuant to the terms of the Richardson Trust was $199,569.97.

184. Defendant Yankee Smith is personally at fault because of her own willful misconduct in knowingly representing to Plaintiffs and remainder beneficiaries the false material fact that the total amount of Richardson Trust estate principal to be distributed pursuant to the

terms of the Richardson Trust was $199,569.97, and is therefore personally liable in her personal capacity in addition to her liability in her fiduciary capacity for such intentional misrepresentations pursuant to Tenn. Code Ann. § 35-15-1010(c).

185. Defendant Yankee Smith is also liable in her capacity as a Co-Trustee and surviving Co-Trustee for knowingly representing to Plaintiffs and remainder beneficiaries the false material fact that the total amount of Richardson Trust estate principal to be distributed pursuant to the terms of the Richardson Trust was $199,569.97.

186. Defendants are jointly and severally liable for committing fraud by intentional misrepresentation of material facts in knowingly representing to Plaintiffs and remainder beneficiaries the false material fact that the total amount of Richardson Trust estate principal to be distributed pursuant to the terms of the Richardson Trust was $199,569.97.

## SIXTH CLAIM FOR RELIEF
### (Fraud by Intentional Misrepresentation by Omission of Material Facts)

187. Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Amended Complaint as if set forth in full.

188. When Defendants represented to Plaintiffs and remainder beneficiaries on November 8, 2011, the false material fact that the total amount of Richardson Trust estate principal to be distributed pursuant to the terms of the Richardson Trust was $199,569.97, they concealed the material fact that the amount of Richardson Trust estate transferred by Bank of America to the Co-Trustees on September 29, 1999, was $354,500.00.

189. Defendants intentionally concealed from Plaintiffs and remainder beneficiaries the material fact that the amount of Richardson Trust estate transferred by Bank of America to the Co-Trustees on September 29, 1999, was $354,500, with the intent to deceive Plaintiffs and remainder beneficiaries.

40

190. Plaintiffs and remainder beneficiaries were not aware of the material fact that the amount of Richardson Trust estate transferred by Bank of America to the Co-Trustees on September 29, 1999, was $354,500, and would have acted differently if they had known that material fact.

191. As a result of Defendants' intentional concealment and omission of the material fact that the amount of Richardson Trust estate transferred by Bank of America to the Co-Trustees on September 29, 1999, was $354,500, Plaintiffs and remainder beneficiaries sustained damages.

192. Defendants acted in concert and colluded in intentionally concealing from Plaintiffs and remainder beneficiaries the material fact that the amount of Richardson Trust estate transferred by Bank of America to the Co-Trustees on September 29, 1999, was $354,500.

193. Defendant Yankee Smith is personally at fault because of her own willful misconduct in intentionally concealing from Plaintiffs and remainder beneficiaries the material fact that the amount of Richardson Trust estate transferred by Bank of America to the Co-Trustees on September 29, 1999, was $354,500, and is therefore personally liable in her personal capacity in addition to her liability in her fiduciary capacity for such fraudulent and intentional misrepresentations by concealment or by omission, pursuant to Tenn. Code Ann. § 35-15-1010(c).

194. Defendant Yankee Smith is also liable in her capacity as a Co-Trustee and Trustee for intentionally concealing from Plaintiffs and remainder beneficiaries the material fact that the amount of Richardson Trust estate transferred by Bank of America to the Co-Trustees on September 29, 1999, was $354,500.

41

195. Defendants are jointly and severally liable for committing fraud or intentional misrepresentation by omission and by concealment by intentionally concealing from Plaintiffs and remainder beneficiaries the material fact that the amount of Richardson Trust estate transferred by Bank of America to the Co-Trustees on September 29, 1999, was $354,500.

**SEVENTH CLAIM FOR RELIEF**
**(Defendants' Conversion of Plaintiffs' Personal Property)**

196. Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Amended Complaint as if set forth in full.

197. The Co-Trustees' withdrawals of $50,000 and $20,000, and Defendant Yankee Smith's withdrawal of $24,000, from the Richardson Trust principal each constitutes the commission of an act of conversion of personal property owned exclusively by Plaintiffs and remainder beneficiaries.

198. Each of the Defendants had knowledge, pursuant to Tenn. Code Ann. § 35-15-104(a), that the Richardson Trust was a principal and income trust, and that the Co-Trustees were not authorized or permitted by the provisions of the Richardson Trust instrument to withdraw any funds from the Trust principal.

199. When the $50,000 and $20,000 withdrawals from the Richardson Trust principal by the Co-Trustees were made, Defendants Yankee Smith, Messimer and MFS had knowledge, pursuant to Tenn. Code Ann. § 35-15-104(a), that those withdrawals were not authorized or permitted by the terms of the Richardson Trust Agreement.

200. When Defendants Holmes, Holmes & Stice, PLC, and Yankee Smith sent emails or telefax to Plaintiffs and remainder beneficiaries during the period from November 3 to November 8, 2011, with Holmes' self-prepared spreadsheets showing the $50,000 and $20,000 withdrawals by the Co-Trustees from the Richardson Trust principal, each of those Defendants

had knowledge, pursuant to Tenn. Code Ann. § 35-15-104(a), that those withdrawals were not authorized or permitted by the Richardson Trust Agreement.

201. On information and belief, the Co-Trustees made an unknown number of additional withdrawals from the Richardson Trust principal in unknown amounts between September 29, 1999, and September 5, 2005.

202. The Co-Trustees' withdrawals of personal property of Plaintiffs and remainder beneficiaries from the Richardson Trust principal were made without the their consent and without any authority of law, and constituted the withholding of said personal property under a claim of title inconsistent with the claim and right of title of Plaintiffs and remainder beneficiaries..

203. By withdrawals from the Richardson Trust principal, the Co-Trustees took dominion and control over personal property of Plaintiffs and remainder beneficiaries by excluding their exclusive ownership rights in that property.

204. Each conversion of funds from the Richardson Trust principal by the Co-Trustees and Defendant Sarah Yankee Smith permanently deprived Plaintiffs and remainder beneficiaries of ownership and use of the funds so converted.

205. Defendants acted in concert and colluded among themselves in allowing and in concealing by dishonest means the unpermitted and unauthorized withdrawals of funds from Richardson Trust principal described above, thereby depriving Plaintiffs and remainder beneficiaries of their ownership rights in those funds. By reason of each Defendant's own conduct and participation in acts appropriating the personal property of Plaintiffs and remainder beneficiaries, each Defendant is liable for commission of state common law torts of conversion

206. As a result of Defendants' actions in concert and collusion in the commission and concealment of acts of conversion of personal property of Plaintiffs and the remainder beneficiaries from the Richardson Trust principal, Plaintiffs and remainder beneficiaries sustained damages.

207. Defendant Yankee Smith is personally at fault for each of her conversions of personal property, namely, money, owned by Plaintiffs and remainder beneficiaries and withdrawn from the Richardson Trust principal because of her own willful misconduct in her acts of conversion during her administration of that Trust, and therefore is liable in her personal capacity in addition to her liability in her fiduciary capacity, pursuant to Tenn. Code Ann. § 35-15-1010(c).

208. Defendant Sarah Yankee Smith is liable in her capacity as a Co-Trustee and Trustee for her commission of acts of conversion of personal property of Plaintiffs and remainder beneficiaries from the Richardson Trust principal during her administration of that Trust, pursuant to Tenn. Code Ann. § 35-15-1010(d).

209. Defendants are jointly and severally liable for the above conversions of personal property of Plaintiffs and remainder beneficiaries from the Richardson Trust principal.

210. The Co-Trustees failed to deposit into the Richardson Trust principal any of the $19,853.25 refund for excessive administration fees paid to Dr. Lyle R. Smith by Bank of America on an unknown date before August 19, 1999, as unpaid income and to the Richardson Trust principal as a refund for excess administration fees charged against its Richardson Trust principal.

211. The Co-Trustees' failure to deposit into the Richardson Trust principal any portion of the $19,853.25 reimbursed to Dr. Smith as unpaid income and to the Trust for

recovery of administration fees charges against the Trust principal constitutes a conversion of the personal property of plaintiffs' and remainder beneficiaries from the Trust principal.

212.  Each such withdrawal constitutes Defendant Yankee Smith's commission of an act of conversion of personal property owned by Plaintiffs and remainder beneficiaries.

## EIGHTH CLAIM FOR RELIEF
### (Breach of Statutory and Common Law Fiduciary Duty)

213.  Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs above, as if fully set forth herein.

214.  At relevant times, each of the Defendants was a fiduciary for the Richardson Trust pursuant to Tenn. Code Ann. §§ 35-2-102(a)(2), 35-6-102(3) and 35-15-102(a)(2).

215.  Defendants had a duty of trust and fiduciary duty to disclose to Plaintiffs and remainder beneficiaries the material fact that the amount of Richardson Trust estate transferred to the Co-Trustees on September 29, 1999,
was $354,500.

216.  Through the actions set forth above, each of the Defendants committed state common law breach of fiduciary duty in the administration of the Richardson Trust, and breach of state statutory fiduciary duty in violation of  Tenn. Code Ann. §§ 35-6-103 and 35-15-807(b) and 815(b).

217.  Each of the Defendants is liable to Plaintiffs for violations of Tenn. Code Ann. §§ 35-6-103 and 35-15-807(b) and 815(b).

**YANKEE SMITH'S BREACHES OF RICHARDSON TRUST**

**NINTH CLAIM FOR RELIEF**
**(Duty to Administer Trust in Accordance with Its Terms)**

218. Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Amended Complaint as if set forth in full.

219. Through the actions set forth above, Defendant Yankee Smith committed breach of trust against Plaintiffs and remainder beneficiaries by breaching her duty to administer the Richardson Trust Agreement in accordance with its terms and purposes, and in accordance with the Tennessee Unform Trust Code, Tenn. Code Ann., Title 35, Chapter 15, in violation of Tenn. Code Ann. §§ 35-15-801; 35-6-103(b) and 35-15-105(b)(2), 801, 804 and 815(a)(1).

220. Defendant Yankee Smith is liable to Plaintiffs for her violations of Tenn. Code Ann. §§ 35-15-801; 35-6-103(b) and 35-15-105(b)(2), 801, 804 and 815(a)(1).

**TENTH CLAIM FOR RELIEF**
**(Duty of Loyalty to Beneficiaries)**

221. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs above, as if fully set forth herein.

222. Through the actions set forth above, Defendant Yankee Smith committed breaches of trust against Plaintiffs and remainder beneficiaries, by breaching her duty of loyalty to the beneficiaries in administering the Richardson Trust Agreement, and by breaching her duty to administer that Trust in the interest of the remainder beneficiaries, in violation of Tenn. Code Ann. §§ 35-15-801, 802(a) and 105(b)(2).

223. Defendant Yankee Smith is liable to Plaintiffs for her violations of Tenn. Code Ann. §§ 35-15-801, 802(a) and 105(b)(2).

## ELEVENTH CLAIM FOR RELIEF
### (Duty to Control and Protect Trust Property)

224. Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Amended Complaint as if set forth in full.

225. Through the actions set forth above, Defendant Yankee Smith committed breach of trust against Plaintiffs and remainder beneficiaries by breaching her duty to control and protect Richardson Trust estate property during her administration of that Trust, in violation of Tenn. Code Ann. § 35-15-809.

226. Defendant Yankee Smith is liable to Plaintiffs for her violations of Tenn. Code Ann. § 35-15-809.

## TWELFTH CLAIM FOR RELIEF
### (Duty to Distribute Trust Property)

227. Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Amended Complaint as if set forth in full.

228. Through the actions set forth above, Defendant Yankee Smith committed breach of trust against Plaintiffs and remainder beneficiaries by breaching her duty to distribute all of the Richardson Trust principal property after partial termination of the Trust, in violation of Tenn. Code Ann. § 35-15-817(b).

229. Defendant Sarah Yankee Smith is liable to Plaintiffs for her violations of Tenn. Code Ann. § 35-15-817(b).

## THIRTEENTH CLAIM FOR RELIEF
### (Duty to Act Impartially Toward the Beneficiaries)

230. Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Amended Complaint as if set forth in full.

47

231. Through the actions set forth above, Defendant Yankee Smith committed breach of trust against Plaintiffs and remainder beneficiaries by breaching her duty to act impartially toward those beneficiaries in administering the Richardson Trust, in violation of Tenn. Code Ann. § 35-15-803.

232. Defendant Yankee Smith is liable to Plaintiffs for her violations of Tenn. Code Ann. § 35-15-803.

## FOURTEENTH CLAIM FOR RELIEF
## (Duty to Keep Beneficiaries Informed About Trust Administration)

233. Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Amended Complaint as if set forth in full.

234. Through the actions set forth above, Defendant Yankee Smith committed breaches of trust against the Plaintiffs and remainder beneficiaries by breaching her duty to keep them reasonably informed about administration of the Richardson Trust and about the material facts necessary for them to protect their interests, in violation of Tenn. Code Ann. § 35-15-813(a)(1).

235. Defendant Yankee Smith is liable to Plaintiffs for her violations of Tenn. Code Ann. § 35-15-813(a)(1).

## YANKEE SMITH'S BREACHES OF JOINT TRUST

## FIFFHTEENTH CLAIM FOR RELIEF
## (Duty to Keep Beneficiaries Informed About Trust Administration)

236. Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Amended Complaint as if set forth in full.

237. Defendant Yankee Smith, in her administration of the Joint Trust Agreement as sole Trustee, has committed breach of trust against Plaintiffs and remainder beneficiaries by

breaching her duty to keep those beneficiaries reasonably informed about the administration of the Joint Trust and about the material facts about administration of the Joint Trust necessary for the remainder beneficiaries to protect their interests, and by breaching her duty to inform each remainder beneficiary that an irrevocable trust has been established and by failing to provide each such beneficiary either a complete copy or an abstract of the Joint Trust, in violation of Tenn. Code Ann. § 35-15-813(a)(1)

238.  Defendant Yankee Smith is liable to Plaintiffs for her violations of Tenn. Code Ann. § 35-15-813(a)(1).

## SIXTEENTH CLAIM FOR RELIEF
### (Duty of Loyalty to Beneficiaries)

239.  Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Amended Complaint as if set forth in full.

240.  Defendant Yankee Smith, in her administration of the Joint Trust as sole Trustee, has committed breach of trust against Plaintiffs and remainder beneficiaries by breaching her duty of loyalty to those beneficiaries in administering the Richardson Trust, and by breaching her duty to administer that Trust in the interest of those beneficiaries, in violation of Tenn. Code Ann. §§ 35-15-801, 802(a) and 105(b)(2).

241.  Defendant Yankee Smith is liable to Plaintiffs for her violations of Tenn. Code Ann. §§ 35-15-801, 802(a) and 105(b)(2).

## SEVENTEENTH CLAIM FOR RELIEF
### (Duty of Recordkeeping and Identification of Trust Property)

242.  Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Amended Complaint as if set forth in full.

243. Defendant Yankee Smith, in her administration of the Joint Trust as sole Trustee, has committed breach of trust against Plaintiffs and remainder beneficiaries by breaching her duty to keep adequate records of her administration of the Joint Trust, her duty to keep Joint Trust Estate property separate from the Co-Trustees' own property, and failing to cause the Trust Estate property to be designated so that the interest of the Joint Trust Estate appears in records maintained by a party other than the Trustee or any beneficiary, in violation of Tenn. Code Ann. § 35-15-810(a) ,(b) and (c).

244. Defendant Yankee Smith is liable to Plaintiffs for her violations of Tenn. Code Ann. § 35-15-810(a) and (b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as set forth below:

**On the First and Second Claims for Relief:**

1. For general damages according to proof at trial, trebled according to statute, 18 U.S.C. § 1964(c);

2. For prejudgment interest according to statute;

3. For Plaintiffs' reasonable attorney's fees and costs according to statute, 18 U.S.C. § 1964(c);

**On the First through and Eighth Claims for Relief:**

4. For general damages according to proof at trial;

5. For equitable relief as appropriate pursuant to applicable law; and

6. Only for the Fourth through Eighth Claims for Relief, punitive damages in an amount to be determined at trial, including but not limited to punitive damages for Defendant Yankee Smith's breaches of trust, pursuant to Tenn. Code Ann. § 35-15-1002;

**On the Ninth through and Fourteenth Claims for Relief (Richardson Trust):**

7. For equitable relief as appropriate pursuant to applicable law;

8. For declaratory judgment as appropriate pursuant to applicable law, including but not limited to a declaration that the Richardson Trust has not been fully and finally terminated because most of the Richardson Trust principal remains in the possession of Defendant Yankee Smith; and

9. For injunctive relief concerning the Richardson Trust estate or principal, pursuant to the equitable authority of this Court, and including equitable remedies as set forth in Tenn.Code Ann. §§ 35-15-1001(b) and 35-15-1004(a), including but not limited to, issuance of an Order that:

   a. Appoints a Special Fiduciary to possess and administer the portion of the Richardson Trust estate and principal that remains in the illegal possession of Defendant Yankee Smith, pursuant to Tenn. Code Ann. § 35-15-1001(b)(5);

   b. Directs and authorizes the Special Fiduciary to:

      i. Prepare an accounting for all Richardson Trust administration since August 19, 1999, pursuant to Tenn. Code Ann. § 35-15-1001(b)(4);

      ii. Trace all Richardson Trust property wrongfully disposed of or wrongfully appropriated and recover the property or its proceeds, pursuant to Tenn. Code Ann. § 35-15-1001(b)(9);

   c. Requires Defendant Yankee Smith to pay all costs and expenses incurred by the Special Fiduciary in performing the actions described in the foregoing paragraphs 9.b.i and 9.b.ii;

d. Requires Defendant Yankee Smith to cooperate fully with any actions and requests by the Special Fiduciary in performing the actions described in the foregoing paragraphs 9.b.i and 9.b.ii; and

e. Provides for any other appropriate relief provided in Tenn. Code Ann., Title 35, Chapter 15, or available at common law or under equity principles, pursuant to Tenn. Code Ann. § 35-15-1001(b)(10);

## On the Fifteenth through and Seventeenth Claims for Relief: (Joint Trust Estate)

10. For injunctive and declaratory relief concerning the Joint Trust Estate or principal, pursuant to this Court's own equitable authority, including but not limited to equitable remedies as set forth in Tenn..Code Ann. §§ 35-15-1001(b) and 35-15-1004(a), including but not limited to, issuance of an Order that:

a. Imposes a constructive trust on all real and personal property in the Joint Trust Estate, including but not limited to all personal property located at 613 Ridgefields Road, Kingsport, Tennessee, that is not specifically identified and listed on Schedule B of the Joint Trust as the separate personal property of Lyle R. Smith, and that is not specifically identified and listed on Schedule C of the Joint Trust as the separate personal property of Defendant Yankee Smith, pursuant to Tenn. Code Ann. § 35-15-1001(b)(9);

b. Declares as void any act of any Settlor or Trustee that is in violation of any terms of the Joint Trust or applicable provisions of the Tennessee Code Annotated, pursuant to Tenn. Code Ann. § 35-15-1001(b)(9);

c. Suspends Defendant Yankee Smith as the Trustee of the Joint Trust, pursuant to Tenn. Code Ann. § 35-15-1001(b)(6);

d.  Removes Defendant Yankee Smith as the Trustee of the Joint Trust for her commission of serious breaches of trust and for her unfitness by conduct or character, unwillingness and persistent failure to administer the Joint Trust Estate effectively and in accordance with the terms of the Joint Trust Agreement, pursuant to this Court's own equitable authority, including removal of a trustee as provided in Tenn. Code Ann. §§ 35-15-1001(b)(7) and 35-15-706;

e.  Declares as void and of no legal effect the provision of the Joint Trust Agreement entitled SECOND that provides that in the event of death, or disability or resignation of Defendant Yankee Smith so that she is unable or unwilling to perform her duties as Trustee of the Joint Trust Estate, her <u>sister</u> shall serve as Successor Trustee;

f.  Appoints a Special Fiduciary to possess and administer the Joint Trust Estate, pursuant to Tenn. Code Ann. § 35-15-1001(b)(5);

g.  Directs and authorizes the Special Fiduciary to:

i.  Prepare an accounting for all Joint Trust Estate administration since October 11, 2007, pursuant to Tenn. Code Ann. § 35-15-1001(b)(4);

ii.  Trace all Joint Trust Estate property wrongfully disposed of or wrongfully appropriated and recover the property or its proceeds, pursuant to Tenn. Code Ann. § 35-15-1001(b)(9); and

iii.  Determine whether Defendant Yankee Smith has kept Joint Trust Estate property separate from her own personal property and separate from the personal property of Dr. Smith, pursuant to Tenn. Code Ann. § 35-15-810(c);

h.  Requires Defendant Yankee Smith to pay all costs and expenses incurred by the Special Fiduciary in performing the actions described in the foregoing paragraphs 10.b.i, 10.b.ii. and 10.b.iii;

i.  Requires Defendant Yankee Smith to cooperate fully with any actions and requests by the Special Fiduciary in performing the actions described in the foregoing paragraphs 10.b.i, 10.b.ii. and 10.b.iii; and

j.  Orders any other appropriate relief provided in Tennessee Code Annotated Title 35, Chapter 15, or available at common law or under equity principles, pursuant to Tenn. Code Ann. § 35-15-1001(b)(10).

**As to All Causes of Action and Claims for Relief:**

11.  For such other legal and equitable relief as the Court may deem Plaintiffs are entitled to receive.

s/  Lawrence W. Puckett
LAWRENCE W. PUCKETT
Counsel for Plaintiffs
5909 Brunswick Street
Springfield, Virginia  22150
Active Member of District of
    Columbia Bar in Good Standing,
    Member No. 343905
Admitted to Bar of U.S. District
    Court, Eastern District of
    Tennessee, on May 18, 2015

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have on this 11th day of April, 2016, caused a copy of the foregoing document to be filed electronically with the Clerk of Court using the Court's

ECF system, ensuring that Notice of this filing will be sent electronically via operation of the

ECF system to all parties who are Filing Users.

s/ Lawrence W. Puckett_____
