UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| LYLE HUNTINGTON RICHARDSON SMITH, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2:15-CV-241 |
| SARAH YANKEE SMITH, *et al.*, | ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

This civil matter is before the Court to address multiple motions to dismiss filed by the defendants. The plaintiffs filed their original complaint alleging a violation of the civil RICO statute, 18 U.S.C. § 1692(c), a conspiracy to violate the civil RICO statute, and fifteen state law claims for breaches of duties regarding the administration of two trusts. [Doc. 1]. The complaint was amended with leave of court and alleges the same claims for relief. [Doc. 81]. Defendants James W. Holmes and Holmes & Stice, PLC ("Holmes defendants") filed a motion to dismiss the complaint, [Doc. 15], and an amended motion to dismiss the amended complaint, [Doc. 84]. Defendant Sarah Yankee Smith ("defendant Smith") filed a motion to dismiss the complaint, [Doc. 20], and an amended motion to dismiss the amended complaint, [Doc. 83]. The Holmes defendants were allowed to adopt the arguments presented in defendant Smith's motion to dismiss. [Doc. 28]. Defendants Emil Messimer and Messimer Financial Services, Inc. ("Messimer defendants") filed a motion to compel arbitration, [Doc. 29], or alternatively, a motion to dismiss the complaint, [Doc. 32], and a motion to dismiss the amended complaint, [Doc. 82]. Plaintiffs filed a consolidated response to the motions to dismiss the complaint, [Doc.

1

46], and the Holmes defendants and Messimer defendants replied, [Docs. 51, 53, 54]. Plaintiffs also filed responses to the amended motions to dismiss the amended complaint, [Docs. 87, 88[1]]. The defendants have either filed motions to adopt the arguments of the other defendants or incorporated the same arguments in their own motions. Plaintiffs have further filed a motion requesting the Court to issue a show cause order to the Messimer defendants relating to a public disclosure report stating that the plaintiffs' "were not in fact [their] customers," a potential issue related to the motion to compel arbitration. [Doc. 67]. The Messimer defendants have responded, [Doc. 69], and the plaintiffs have replied, [Doc. 71]. These matters are ripe for review.

**I.    Facts**

This dispute arises out of the alleged mismanagement of two trusts, the Mary H. Richardson Grantor Trust ("Richardson Trust") and the Lyle R. Smith and Sarah Smith Joint Trust ("Smith Joint Trust"). Mary Richardson, the aunt of Dr. Lyle Richardson Smith, established the Richardson Trust in 1963. Dr. Smith was the income beneficiary of the trust during his lifetime and his children are the remainder beneficiaries of the Richardson Trust. The plaintiffs are the children of Dr. Smith and thereby remainder beneficiaries of the Richardson Trust.[2] The plaintiffs are the step-children of defendant Sarah Smith. On May 20, 1999, Defendant Holmes filed a petition in state court for the appointment of Dr. Smith and Sarah Smith as co-trustees of the Richardson Trust and to remove as trustee a third-party financial institution, Bank of America. According to the plaintiffs, defendant Holmes, Dr. Smith, and

---

[1] Document 89 was also filed as a response in opposition to defendant Smith's amended motion to dismiss. However, document 89 appears to be the same document that was filed as document 87, "Plaintiffs' combined opposition to the Holmes Defendant's and defendant Yankee Smith's Motions to Dismiss Plaintiff's RICO Claims set forth in the First Amended Complaint."

[2] Dr. Smith had a third child, Robert Smith, II and his daughter, took her father's place as equal remainder beneficiary after his death. That beneficiary is not a party to this action.
2

defendant Smith intentionally omitted from the state court filing a complete schedule of assets of the Richardson Trust for the purpose of concealing the original amount of the trust assets from the remainder beneficiary plaintiffs. Dr. Smith's and defendant Smith's trustee appointment was finalized by the state court on August 19, 1999. The plaintiffs allege that, as part of the agreement to appoint Dr. Smith and defendant Smith as trustees, they negotiated through defendant Holmes for Bank of America to remit excess fees to Dr. Smith personally instead of to the trust assets as required by the Richardson Trust agreement.

The plaintiffs allege that on September 29, 1999, Bank of America transmitted a wire transfer of $354,000.00 from the principal cash of the Richardson Trust to the Messimer defendants to establish a securities investment account for the trust. Defendant Holmes "was the intermediary for the communications" between Bank of America and the Messimer defendants regarding this wire transfer and "on information and belief, [defendant] Holmes gave instructions to Bank of America" to transmit the wire transfer on behalf of Dr. Smith and defendant Smith.

Following the death of Dr. Smith on September 3, 2011, the Messimer defendants prepared a report detailing the Richardson Trust portfolio established with the Messimer defendants' financial services entities. The report "shows $164,096.74 as the amount with which Messimer and MFS opened their Richardson Trust account . . . on September 6, 2005." A copy of this report was mailed to the plaintiffs as remainder beneficiaries by defendant Holmes on October 5, 2011. The plaintiffs allege that an amount of $190,403.26, the difference between the $354,000 wire transfer on September 29, 1999 and the amount of $164,096.74 provided by the report as the opening amount, "constitutes the entirety of the damages alleged in Plaintiffs' First and Second Claims for Relief in this Amended Complaint (Plaintiffs' RICO Claims)." Following the death of Dr. Smith, defendant Holmes prepared and emailed to the plaintiffs a

3

spreadsheet detailing the trust assets and transactions from September 2005 to September 2011. Following a series of emails from November 2, 2011 to November 14, 2011, plaintiffs each signed waivers and releases of claims against the trustees and received their one-third portion of the Richardson Trust distribution. The plaintiffs now allege that the signatures on the releases were improperly induced and coerced at the time they were given.

The plaintiffs allege 17 claims for relief. Count one alleges a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 United States Code § 1962(c), based on predicate offenses of mail and wire fraud. Count Two alleges a conspiracy to violate the federal RICO statute in violation of 18 United States Code § 1962(d). Counts 3 through 17 allege violations of various state laws and common law, mainly unjust enrichment, conversion, fraud, and breach of various duties regarding the administration of the Richardson Trust and the Smith Joint Trust[3]. The first two claims for relief, alleged violations of the civil RICO statute, are the only claims at issue in this opinion as they provide the only basis for subject matter jurisdiction, i.e., federal question jurisdiction.

The plaintiffs allege that the defendants collectively were associated in-fact for the purpose of carrying out a criminal RICO enterprise, the goal of which is to "defraud Plaintiffs as needed, first, by targeting their interests as remainder beneficiaries in the Richardson Trust principal" by concealing and withholding material financial information from the plaintiffs as remainder beneficiaries of the trust. The plaintiffs further allege that defendant Smith "devised and has controlled and overseen each [of the other defendants'] participation in the scheme to

---

[3] During their marriage, Dr. Smith and defendant Smith established the Lyle R. Smith and Sarah Y. Smith Joint Trust ("Smith Joint Trust"). Following Dr. Smith's death, defendant Smith became the sole trustee of the irrevocable Smith Joint Trust. Dr. Smith's children, including the plaintiffs, are the remainder beneficiaries of the Smith Joint Trust. Because the alleged mismanagement of this trust does not pertain to the RICO claims, the Court will not discuss the alleged facts relating to the Smith Joint Trust in this opinion.

4

defraud" and that defendant Smith "directed all other defendants to take actions necessary to accomplish the overall aim of the criminal enterprise." The plaintiffs allege that the "pattern of racketeering activity" included a "series of mailings and emails" which constitute "indictable" mail and wire fraud offenses. The first instance of alleged mail fraud occurred on October 5, 2011 when the Holmes defendants emailed to the plaintiffs a report, created by the Messimer defendants, containing alleged falsities regarding the amount of trust principal used to open the securities investment account managed by the Messimer defendants and the date the account was opened. The plaintiffs then allege seven counts of wire fraud as emails sent from the Holmes defendants on behalf of defendant Smith on November 3, 4, 8, 9, 10, and 14 containing spreadsheets of the Richardson Trust assets and transactions that were allegedly misrepresented, false, and omitted material information. Finally, the plaintiffs allege an eighth count of wire fraud by the Holmes defendants and defendant Smith on November 15, 2011, as wire transfers of money to each remainder beneficiary of their portion of the trust asset distribution that the plaintiffs allege was false and fraudulently misrepresented as the total amount of Richardson Trust principal.

## II. Standard of Review

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) eliminates a pleading or portion thereof that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Moreover, Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). The

5

Court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). However, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and to "state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937, 1949-50 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949. Moreover, this Court need not "'accept as true a legal conclusion couched as a factual allegation.[4]'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft*, 129 S.Ct. at 1949. Lastly, this Court may consider documents central to the plaintiff's claims to which the complaint refers and incorporates as exhibits. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

The plaintiffs must also meet the more rigorous, heightened pleading standard of Rule 9(b) when alleging claims of fraud. Fed. R. Civ. P. 9(b); *Heinrich v. Waiting Angels Adoption Svcs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012). In alleging fraud, the party must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Alleging fraud with particularity requires, at a minimum, allegations of the "time, place, and content of the alleged

---

[4] The plaintiffs' 55-page amended complaint is replete with recitations of legal conclusions and elements of the claims. The Court will take only the factual allegations as true but is not bound to accept the plaintiffs' many alleged legal conclusions. Likewise, the amended complaint contains many allegations made "on information and belief." "These are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013). District Courts in the Sixth Circuit, however, appear to have held that such allegations are still permissible post-*Twombly* and *Iqbal* "where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Cassidy v. Teaching Co., LLC*, 2014 WL 1599518, at *3 (S.D. Ohio April 21, 2014) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir.2010)).

misrepresentation" relied on by the plaintiffs, the fraudulent scheme, the fraudulent intent, and the resulting injury. *Heinrich*, 668 F.3d at 403 (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)).

### III. Analysis

The federal civil RICO statute makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). The RICO statute also makes a conspiracy to violate the statute unlawful. 18 U.S.C. § 1962(d). To state a claim under RICO, the plaintiffs must sufficiently plead the following elements, "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). All three defendant groups, the Holmes defendants, the Messimer defendants, and defendant Smith have filed motions to dismiss pursuant to Rule 12(b)(6) alleging that the plaintiffs have failed to state a civil RICO claim because there was no "enterprise" and no "pattern of racketeering activity."

#### a. Enterprise

"Enterprise" is defined to include "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The plaintiffs allege that the defendants were an "association-in-fact" enterprise. This definition is to have a "wide reach" and the RICO statute is to be liberally construed. *Boyle v. United States*[5], 556 U.S. 938, 944 (2009) (citing *Ali v. Federal Bureau of Prisons*, 552 U.S. 214 (2008)). To establish an "enterprise" under the

---

[5] Although *Boyle* deals with an association-in-fact enterprise in a criminal RICO case, the Sixth Circuit has cited *Boyle* for its discussion of association-in-fact enterprises in a civil RICO matter. *See Ouwinga v. Benistar 419 Plan Services, Inc.*, 694 F.3d 783, 794-95 (6th Cir. 2012).

7

RICO statute, the plaintiff must prove "(1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; (2) that the members of the enterprise functioned as a continuing unit with established duties; and (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged." *Ouwinga*, 694 F.3d at 793 (citing *United States v. Chance*, 306 F.3d 356, 372 (6th Cir. 2002)).

An enterprise is a "group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle*, 556 U.S. at 938 (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)). The existence of the enterprise is a distinct element from the pattern of racketeering activity. *Turkette*, 452 U.S. at 583. An association-in-fact enterprise must have a "structure" with three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946. "Purpose" takes on the ordinary usage definition of a venture, undertaking, or project. *Id.* Association requires interpersonal relationships and common interest. *Id.* However, a hierarchical structure, or chain of command is not necessary. *Id.* at 948. "Decisions may be made on an ad hoc basis and by any number of methods. . . ." *Id.* The enterprise must "function as a continuing unit and remain in existence long enough to pursue a course of conduct," however, a RICO enterprise may remain in existence by engaging in "spurts of activity punctuated by periods of quiescence." *Id.*

After a thorough review of the plaintiffs' 54-page Amended Complaint, the Court was unable to find any facts alleged to show the defendants operated with a common purpose or a relationship. The plaintiffs made many bare recitals that the defendants were acting in concert for the purpose of converting the Richardson Trust principal for their own use. The Amended

8

Complaint does not, however, take those bare allegations of working-in-concert and conspiracy from possible to plausible as required under *Twombly/Iqbal*.

The plaintiffs claim that the Messimer defendants were aware of a $394,000 wire transfer to an entity the plaintiffs believed to have been controlled by the Messimer defendants in 1999. The Messimer defendants prepared a report in 2011 allegedly falsely stating that the Ameritrade account being disbursed as part of the Richardson Trust principal was opened in 2005 with only $164,096.74. The plaintiffs claim that defendant Smith was the leader or organizer of the enterprise and directed all of the activities of the other defendants, but do not allege additional facts relating to her alleged leadership activities or decisions. The plaintiffs allege that the Holmes defendants were an "intermediary" between Bank of America and the Messimer defendants during the time that the initial wire transfer was made in 1999. They also allege that defendant Holmes stated he would "instruct" defendant Smith to make the final distributions after receiving the Richardson Trust final distribution releases in 2011. Holmes also created a simple spreadsheet in 2011 detailing the Richardson Trust transactions from 2005 (the opening of the Ameritrade account) until Dr. Smith's death in 2011. These spreadsheets were emailed to the remainder beneficiaries.

These alleged facts, occurring over the course of 12 years, do not take the plaintiffs' bare allegations of conspiracy and working-in-concert from merely possible to plausible. These factual allegations, even taken as true, do not make plausible an agreement between the defendants to work together for a common purpose of converting the Richardson Trust. There are no allegations showing that the three sets of defendants "functioned as a continuing unit" over these years. The plaintiffs have not even alleged "spurts of activity" associated with a continued purpose to convert the Richardson Trust principal where there are actually only two

9

time periods discussed: 1999, at the initial wire transfer, and the fall of 2011, when the allegedly false report and spreadsheet were created and emailed to the plaintiffs. The plaintiffs have alleged no benefit to either the Holmes or Messimer defendants for their participation in the alleged conspiracy except for what these defendants would have made from standard legal or investment management fees. The Court finds that the plaintiffs' have failed to sufficiently plead that there was an enterprise that worked together for the purpose of converting trust principal for the defendants' use or the existence of an agreement to attempt to convert trust principal. Therefore, the plaintiffs have not sufficiently pleaded the RICO claim, Count 1.

### b. Pattern of Racketeering Activity

"Racketeering activity" includes violation of the statutes prohibiting mail and wire fraud, 18 United States Code §§ 1341, 1342. 18 U.S.C. § 1961(1). A "pattern of racketeering activity" requires "at least two acts of racketeering activity" which occurred within ten years of each other. 18 U.S.C. § 1961(5). The plaintiffs allege that the defendants engaged in a pattern of racketeering activity by committing nine counts of mail and wire fraud in October-November, 2011. However, merely pleading at least the minimum number of predicates acts is insufficient to prove a "pattern" of racketeering activity. *Ouwinga*, 694 F.3d at 795 (citing *H.J. Inc. v. Nw. Bell Tell. Co.*, 492 U.S. 229 (1989)). The plaintiff must also show that the racketeering practices are related and that they "amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239. This requirement is called the "relationship plus continuity" test. *Heinrich*, 668 F.3d at 409 (citing *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 355 (6th Cir. 2008)).

To satisfy the relationship requirement, the acts must have "similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240. The continuity prong

10

Case 2:15-cv-00241-JRG-MCLC   Document 92   Filed 09/08/16   Page 10 of 14   PageID #: 1014

may be established by showing either a "close-ended" pattern or an "open-ended" pattern. *Heinrich*, 668 F.3d at 409-10. The plaintiffs argue in their amended response to the motions to dismiss that they have adequately alleged a "close-ended" pattern of racketeering activity and an "open-ended" pattern does not apply to the alleged facts[6]. [Doc. 87 at 5]. A "close-ended" pattern is a "series of related predicate acts extending over a substantial period of time." *Heinrich*, 668 F.3d at 409, (citing *H.J. Inc.*, 492 U.S. at 241-42). Important here is the "substantial period of time" in the definition of "close-ended" pattern. The related series of predicate acts must extend for a "substantial" period; predicate acts extended over merely a few weeks or months are insufficient to satisfy the "close-ended" continuity requirement. *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242). Predicate acts affecting one victim and spanning seventeen months has been found insufficient to meet the continuity requirement. *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994). Predicate acts affecting about four victims spanning less than two months likewise did not meet the requirement for close-ended continuity. *Heinrich*, 668 F.3d at 410.

Here, the plaintiffs allege a total of nine predicate acts of mail and wire fraud during a period of just over one month, from October 5, 2011 to November 15, 2011. The plaintiffs allege Holmes's emails on October 5 and November 3-14 with the allegedly false investment management report and the allegedly false spreadsheet as predicate acts. The plaintiffs also allege that the final wire transfer of distributions of the Richardson Trust principal on November

---

[6] The Holmes defendants argue in their motion to dismiss that the plaintiffs have failed to show that there is a threat of future criminal activity as required for the continuity prong. This threat of future criminal activity is prevalent in an "open-ended" pattern, defined as "a set of predicate acts that poses a threat of continuing criminal conduct extending beyond the period in which the predicate acts were performed." *H.J. Inc.*, 492 U.S. at 241-42. In an open-ended pattern, the RICO action is generally brought before the defendants have been able to conduct predicate acts over a substantial period of time. *Heinrich*, 668 F.3d at 410. In such cases, the continuity prong is established by demonstrating a threat of continuing activity. *Id.* In response to this argument, the plaintiffs state they are alleging only a close-ended pattern. Where the plaintiff is pleading a "close-ended" pattern, the plaintiff is not required to show that the defendants present a threat of future criminal activity if they have shown that the defendants engaged in related predicate acts over a substantial period of time. *See id.*

11

15 to the remainder beneficiaries the day following the final email was also a predicate act. Even if the Court assumes that the plaintiffs have sufficiently pled the heightened pleading requirements of mail and wire fraud as predicate racketeering activity, a five-week period of racketeering activity does not make a "pattern" sufficient to meet the close-ended continuity requirement. The alleged predicate activity did not create a series of predicate acts that extended for a "substantial" period of time. The plaintiffs have failed to sufficiently plead an element of their RICO claim, a "pattern" of racketeering activity. The RICO violation alleged in Count 1 of the Amended Complaint is hereby DISMISSED.

### c. Conspiracy to Violate RICO

To sufficiently allege a conspiracy to violate the RICO statute, the plaintiffs must successfully allege all the elements of a RICO claim as well as alleging "the existence of an illicit agreement to violate the substantive RICO provision." *Heinrich*, 668 F.3d at 411 (citing *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983)). First, the plaintiffs have failed to plausibly allege that the defendants, or any combination thereof, entered into any agreement to violate the RICO statute. The only allegations regarding such an agreement in the amended complaint are conclusory allegations or a bare recital of the agreement requirement. For example, the plaintiffs allege that "upon information and belief, Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity," and "upon information and belief, Defendants agreed to conduct or participate, directly or indirectly, in the conduct, management or operation of the Enterprise's affairs through a pattern of racketeering activity." [Doc. 81 ¶ 164, 165]. Such allegations, without any alleged factual support in the

complaint, are insufficient to plausibly state a conspiracy. Additionally, the plaintiffs' conspiracy claim also fails because they have failed to plausibly allege a substantive RICO violation. Therefore, the RICO conspiracy violation alleged in Count 2 of the Amended Complaint is hereby DISMISSED.

### d. Supplemental Jurisdiction

The plaintiffs allege the Court has federal question subject matter jurisdiction based on their alleged RICO violation. 28 U.S.C. § 1331. The alleged RICO claims provide the only basis for federal jurisdiction in the plaintiffs' amended complaint.[7] Plaintiff Lyle Smith and all defendants are residents of Tennessee and therefore, the Court cannot exercise diversity subject matter jurisdiction. 28 U.S.C. § 1332. The only basis for jurisdiction over 15 remaining state law claims is supplemental jurisdiction. 28 U.S.C. § 1367. A court may decline to exercise supplemental jurisdiction if the state law claims "substantially predominate over the claim or claims over which the district court has original jurisdiction" or where the "district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §§ 1367(c)(2), (3). The remaining claims for relief request an accounting of the Richardson Trust and the Smith Joint Trust. The plaintiffs also allege conversion, unjust enrichment, and breaches of various duties relating to the administration and protection of the trusts. Not only do these state law claims clearly predominate over the alleged RICO violations, the Court has dismissed the only claims based in federal law, the RICO claims. The Court declines to exercise supplemental jurisdiction over the only remaining counts of the Amended Complaint, Counts 3 through 17, alleging violations state law.

---

[7] The plaintiffs state that the Court has subject matter jurisdiction over their claims "under 28 U.S.C. §§ 1331 and 2202 (Declaratory Judgment Act), and under 18 U.S.C. § 1964(c)." *Amended Complaint*, ¶ 14. However, § 2202, the Declaratory Judgment Act does not create subject matter jurisdiction as it is not an independent basis of jurisdiction. *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2001).

**IV. Conclusion**

Based on the foregoing, the plaintiffs' Amended Complaint will be dismissed. The Holmes defendants' motion to dismiss and amended motion to dismiss, [Docs. 15, 84], are GRANTED. Defendant Smith's motion to dismiss and amended motion to dismiss, [Docs. 20, 83], are GRANTED. The Messimer defendants' alternative motion to dismiss and amended alternative motion to dismiss, [Docs. 32, 82], are GRANTED. Because the Court is granting the Messimer defendant's alternative motions to dismiss, their motion to compel arbitration, [Doc. 29], is DENIED as MOOT. The plaintiffs filed a motion requesting the Court issue a show cause order to the Messimer defendants regarding an alleged statement that may have had some implication on the Messimer defendants' motion to compel arbitration. [Doc. 67]. Because the Court is denying the motion to compel arbitration, the plaintiffs' related motion for an order to show cause, [Doc. 67], is similarly DENIED as MOOT.

The Court holds that the plaintiffs have failed to sufficiently allege that the defendants were part of an enterprise that conducted a pattern of racketeering activity or that there was a conspiracy to commit a RICO violation as alleged in Counts 1 and 2 of the Amended Complaint and these counts are DISMISSED WITH PREJUDICE. The remaining claims of Counts 3 through 17 are DISMISSED WITHOUT PREJUDICE.

ENTER:

                                          s/J. RONNIE GREER
                                     UNITED STATES DISTRICT JUDGE